# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2014AP2603-CR |
| COMPLETE TITLE: | State of Wisconsin,<br>      Plaintiff-Respondent,<br>   v.<br>Glenn T. Zamzow,<br>      Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
366 Wis. 2d 562, 874 N.W.2d 328
(Ct. App. 2016 – Published)
PDC No: 2016 WI App 7

| | |
|---|---|
| OPINION FILED: | April 6, 2017 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 13, 2016 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Fond du Lac |
| JUDGE: | Gary R. Sharpe |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | ABRAHAMSON, J. joined by BRADLEY, A. W., J. dissent (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there was a brief and oral argument by *Thomas B. Aquino*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *Warren D. Weinstein*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

**2017 WI 29**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2014AP2603-CR
(L.C. No. 2011CT145)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

    Plaintiff-Respondent,

    v.

Glenn T. Zamzow,

    Defendant-Appellant-Petitioner.

**FILED**

**APR 6, 2017**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 REBECCA GRASSL BRADLEY, J. We review a published opinion of the court of appeals,[1] which determined that use of a deceased police officer's recorded statements at a suppression hearing[2] did not violate Glenn T. Zamzow's rights under the Confrontation Clause of the Sixth Amendment or the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We hold that the Confrontation Clause protects a

[1] State v. Zamzow, 2016 WI App 7, 366 Wis. 2d 562, 874 N.W.2d 328.

[2] The Honorable Gary R. Sharpe, Fond du Lac County Circuit Court, presiding.

defendant's right to confrontation at trial but not at suppression hearings, and admission of the deceased officer's recorded statements during the suppression hearing did not deprive Zamzow of due process. We therefore affirm.

## I. BACKGROUND

¶2 Officer Craig Birkholz of the Fond du Lac Police Department stopped Zamzow's car early on a Sunday morning after observing the car cross the center line. During the stop, Zamzow smelled of intoxicants and admitted to drinking alcohol. Officer Curt Beck arrived on the scene with a third officer to assist Birkholz. The officers arrested Zamzow, and the State charged him with operating while intoxicated and operating with a prohibited alcohol concentration, both as third offenses.[3] Zamzow filed a motion to suppress all evidence obtained during the stop, claiming Birkholz lacked reasonable suspicion. Before the court could hold a suppression hearing, Birkholz died.

¶3 With Birkholz unavailable to testify at the suppression hearing, the State instead relied on a recording of the stop, as well as testimony by Beck and a computer forensic specialist from the police department, to establish reasonable suspicion. The computer forensic specialist first testified about recordings from cameras mounted on the two squad cars involved in the stop. He testified that he prepared a DVD containing the dashboard camera video from each car. Next, Beck

---

[3] See Wis. Stat. § 346.63(1)(a)-(b) (2011-12).

2

explained his role in assisting with the stop. He acknowledged watching the DVD with the dashboard camera videos, and he confirmed that the recording produced by his own car's camera fairly and accurately depicted the stop as he remembered it. Additionally, he confirmed that the dashboard camera video from Birkholz's car fairly and accurately depicted the events Beck personally observed, and verified that the video consisted of a continuous and uninterrupted segment.

¶4 Based on the two officers' testimony——and over defense counsel's objection to the impossibility of cross-examining Birkholz about his reasons for initiating the stop——the circuit court allowed the State to introduce the video from Birkholz's car, which the court viewed. After hearing arguments from Zamzow's counsel and from the State, the court took the suppression motion under advisement in order to further review the video. While watching the video again in chambers, the circuit court discovered that the recording included audio, which had not accompanied the video at the suppression hearing. The court ordered a second suppression hearing so the audio accompanying the video could be played on the court record.

¶5 At the second suppression hearing, the court heard the initial statement Birkholz made to Zamzow after initiating the stop: "Officer Birkholz, city police. The reason I stopped you is you were crossing the center line there coming at me and then again when I turned around and got behind you." The court also

3

heard audio in which Birkholz explained his basis for the stop to the arriving officers.[4] Zamzow's counsel objected to admission of both audio statements, arguing that the inability to cross-examine Birkholz denied Zamzow his right to confront a witness against him.

¶6 The circuit court denied Zamzow's suppression motion and made the following findings of fact:

> [O]n Sunday night, March 13th, at 3:04 a.m. or thereabouts, the officer in this case, deceased Officer Birkholz, did make an observation that the defendant had crossed the center line on Johnson Street as he was approaching the Johnson street bridge from the east traveling west. The officer turned around, stopped the vehicle, and has testified that the vehicle crossed the center line again as it was going over the Johnson Street bridge.

From the video, the court could not "discern in any fashion . . . whether a cross of the center line occurred prior to the two vehicles crossing paths," and the court added that it was "difficult from the video to discern whether the defendant's vehicle actually crossed the center line as it was going over the bridge." Focusing instead on the statement Birkholz made to Zamzow, the court concluded, "[T]he . . . testimony that the vehicle did, in fact, cross the center line twice in that short amount of time" provided a "sufficient basis for the officer to have made a stop for further inquiry."

---

[4] In its reasonable suspicion determination, the court did not rely on Birkholz's statement to the arriving officers.

¶7 On Zamzow's motion for reconsideration, the circuit court clarified its decision. Relying on State v. Frambs, 157 Wis. 2d 700, 460 N.W.2d 811 (Ct. App. 1990), the court concluded that the Confrontation Clause does not apply at a suppression hearing. The court added that, even if the Confrontation Clause does apply at suppression hearings, Birkholz's statement to Zamzow was nontestimonial and therefore admissible.

¶8 Zamzow proceeded to trial, and a jury convicted him on both counts. At trial, the jury did not hear the audio recording of Birkholz's statement. After the circuit court denied Zamzow's motion for postconviction relief, he appealed and the court of appeals affirmed. State v. Zamzow, 2016 WI App 7, ¶1, 366 Wis. 2d 562, 874 N.W.2d 328. The court of appeals agreed with the circuit court that "the Confrontation Clause simply does not apply to pretrial hearings such as the suppression hearing at issue in this case." Id., ¶11. Emphasizing United States Supreme Court precedent suggesting the right to confrontation is a trial right, the court rejected Zamzow's contention that Crawford v. Washington, 541 U.S. 36 (2004), undermined Frambs and extended the confrontation right to pretrial proceedings. Id., ¶¶10-11. Additionally, the court of appeals rejected Zamzow's claim, first raised in his postconviction motion, that admitting the audio statements denied him due process of law. Id., ¶16. In particular, the court of appeals relied on United States v. Matlock, 415 U.S. 164 (1974), and United States v. Raddatz, 447 U.S. 667 (1980), to conclude that "the Supreme Court has, at a minimum, intimated

5

that admission at a pretrial suppression hearing of hearsay statements where the declarant cannot be cross-examined does not present a due process problem." Zamzow, 366 Wis. 2d 562, ¶13.

¶9 Zamzow filed a petition for review, which we granted.

## II. STANDARD OF REVIEW

¶10 Ordinarily, the decision whether to admit evidence is within the circuit court's discretion. State v. Griep, 2015 WI 40, ¶17, 361 Wis. 2d 657, 863 N.W.2d 567 (citing State v. Deadwiller, 2013 WI 75, ¶17, 350 Wis. 2d 138, 834 N.W.2d 362). Whether the admission of evidence violates a defendant's rights under the Confrontation Clause of the Sixth Amendment presents a question of law, which this court reviews de novo. Id. (citing Deadwiller, 350 Wis. 2d 138, ¶17). "Whether a defendant's right to due process was violated also presents a question of law that we review de novo." State v. McGuire, 2010 WI 91, ¶26, 328 Wis. 2d 289, 786 N.W.2d 227.

## III. ANALYSIS

### A. The Confrontation Right

¶11 The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." In Pointer v. Texas, 380 U.S. 400 (1965), the Supreme Court held that the Sixth Amendment's Confrontation

Clause applies to the states through the Due Process Clause of the Fourteenth Amendment. Id. at 403, 405.[5]

¶12 Zamzow contends the Sixth Amendment right to confrontation "[i]n all criminal prosecutions" guarantees a right to confront the witnesses against him at suppression hearings. Although he acknowledges the Supreme Court has never directly addressed the question, he argues the Court assumed the Confrontation Clause applies at a suppression hearing in McCray v. Illinois, 386 U.S. 300 (1967).[6] He also draws analogies to the Court's decisions regarding other Sixth Amendment rights, noting the Public Trial Clause applies at suppression hearings,

---

[5] Zamzow has not raised any argument that his right to confrontation differs under the Wisconsin Constitution, which provides that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face." Wis. Const. art. I, § 7. "We have observed that [the Confrontation Clause and Wis. Const. art. I, § 7] are 'generally' coterminous . . . ." State v. Rhodes, 2011 WI 73, ¶28, 336 Wis. 2d 64, 799 N.W.2d 850 (citing State v. Hale, 2005 WI 7, ¶43, 277 Wis. 2d 593, 691 N.W.2d 637).

[6] In support of this argument, Zamzow directs us to Professor LaFave's Search and Seizure, which asserts, "It should not be assumed that the right of confrontation has no application at a Fourth Amendment suppression hearing, for such is not the case." 6 Wayne R. LaFave, Search and Seizure § 11.2(d), at 92 (5th ed. 2012). But see 3 Wayne R. LaFave et al., Criminal Procedure § 10.5(e), at 618 (4th ed. 2015) ("[D]efendant's right of cross-examination at the suppression hearing may be substantially narrower than that available at trial." (citing McCray v. Illinois, 386 U.S. 300 (1967))); cf. Nancy Hollander et al., Wharton's Criminal Procedure § 8:10, at 8-28 (14th ed. 2015) ("At the federal level, the defendant's right to confront a witness, embodied in the Sixth Amendment of the Constitution, was early held not to apply to the preliminary hearing." (footnote omitted)).

7

*Waller v. Georgia*, 467 U.S. 39, 46-47 (1984), and the Counsel Clause applies at preliminary hearings, *Coleman v. Alabama*, 399 U.S. 1, 9-10 (1970). Emphasizing the Court's relatively recent overhaul of its Confrontation Clause jurisprudence in *Crawford*, Zamzow asserts that evidence presented at suppression hearings should also be subject to the Confrontation Clause's guaranteed procedural mechanism for scrutinizing witness testimony.

¶13 In recent years, *Crawford* and its progeny initiated a reassessment of the nature of the Confrontation Clause's protections. *See* *Crawford*, 541 U.S. at 61 ("To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee."). By contrast, Zamzow presents a different question here, asking not *what* the Confrontation Clause protects but *when* its protections apply. To answer Zamzow's question, we begin with the text of the Sixth Amendment and, building on the historical analyses in *Crawford*, examine the Confrontation Clause's meaning at the time of its adoption.

¶14 On its face, the Sixth Amendment's introductory phrase "[i]n all criminal prosecutions" seems to speak in broad terms, and early English dictionaries provide little guidance regarding the scope of "prosecutions" during the Framing era. Samuel Johnson's dictionary defined a "prosecution" as a "[s]uit against a man, in a criminal cause." 2 Samuel Johnson, A Dictionary of the English Language (London 1756). Noah Webster provided a more comprehensive definition: "the process of exhibiting formal charges against an offender before a legal

8

tribunal, and pursuing them to final judgment." 2 Noah Webster, An American Dictionary of the English Language (New York, S. Converse 1828). Although both definitions contemplate a formal process for pursuing criminal charges, neither delineates the specific procedures used to determine guilt or innocence. Consequently, the Sixth Amendment's text does not alone provide precise insights into the applicability of the Confrontation Clause during particular stages of a criminal proceeding.

¶15 Accordingly, because "[t]he founding generation's immediate source of the [right to confront one's accusers] . . . was the common law," Crawford, 541 U.S. at 43, we also look to the common law to guide our understanding of the Confrontation Clause's meaning. See Mattox v. United States, 156 U.S. 237, 243 (1895) ("We are bound to interpret the Constitution in the light of the law as it existed at the time it was adopted . . . ."). Blackstone extolled the virtues of confrontation in his discussion of "the nature and method of the trial by jury." 3 William Blackstone, Commentaries on the Laws of England 349 (Philadelphia 1772) (emphasis omitted). He explained that "the confronting of adverse witnesses" affords an "opportunity of obtaining a clear discovery" of the underlying truth of the matter at issue. Id. at 373. Unlike a "private and secret examination taken down in writing before an officer" and later read at trial, the "examination of witnesses viva

9

voce"[7] provides a superior mechanism for achieving the trial's primary aim:  "the clearing up of truth" in the presence of the jury.   Id.   Absent from Blackstone's commentary was any indication the common law right to confront witnesses existed at any stages preceding the trial.  See 4 id. at 317-57.

¶16  In Mattox v. United States, 156 U.S. 237 (1895), one of the Supreme Court's earliest opinions discussing the Confrontation Clause, the Court described the common law right in a manner consistent with Blackstone's articulation:

> The primary object of the constitutional provision in question was to prevent depositions or ex parte affidavits . . . being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury . . . .

Id. at 242.  Like Blackstone, the Court emphasized the trial-oriented protection afforded by the right to confrontation of witnesses, which guarantees the "personal presence of the witness before the jury."  Id. at 243.[8]

---

[7] "By word of mouth; orally. . . .  In reference to the examination of witnesses, the term means that oral rather than written testimony was taken."  Viva Voce, Black's Law Dictionary 1804 (10th ed. 2014).

[8] We make no pretense of replicating Crawford's encyclopedic review of the Sixth Amendment's history, but the dissent faults the depth and breadth of our inquiry into the common law right of confrontation and the original public meaning of the Confrontation Clause.  See Dissent ¶41 n.7, ¶49.  As contrary evidence of historical meaning, however, the dissent cites two twenty-first century law review articles about confrontation at

(continued)

¶17 As criminal procedure evolved over the past century to include various pretrial proceedings, the Supreme Court addressed questions about non-trial criminal hearings and their relationship to procedural guarantees mandated by the Constitution. In particular, suppression hearings have become an important stage in many criminal cases since the Supreme Court adopted the exclusionary rule in Weeks v. United States, 232 U.S. 383 (1914).[9] When examining the intersection of constitutional requirements and non-trial proceedings, the Court identified a "difference in standards and latitude allowed in passing upon the distinct issues of probable cause and guilt." Brinegar v. United States, 338 U.S. 160, 174 (1949). At a criminal trial, traditionally before a jury, "[g]uilt . . . must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some

---

sentencing, two modern treatises, a 1924 case from this court, contradictory separate writings in Gannet Co. v. DePasquale, 443 U.S. 368 (1979), and a non-precedential 1974 dissent from denial of certiorari. Only the dissent's quotation from Joseph Chitty, A Practical Treatise on the Criminal Law (5th ed. 1847), even begins to offer any persuasive insight into common law practice at the time of the Sixth Amendment's framing. Although the dissent's authorities assuredly provide thoughtful commentary for any court reconciling the Sixth Amendment's protections with modern criminal procedure, after-the-fact analysis is no substitute for contemporaneous evidence when examining original meaning.

[9] Although the exclusionary rule originally applied only in federal criminal cases, the Supreme Court later held in Mapp v. Ohio, 367 U.S. 643 (1961), that the exclusionary rule also applies in state criminal cases through the Due Process Clause of the Fourteenth Amendment.

11

extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard." Id. (emphasis added). Probable cause, in contrast, implicates only "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id. at 175.

¶18 When discussing the government's privilege not to reveal the identity of a confidential informant, the Supreme Court relied on this distinction between proof at trial——where a defendant's guilt or innocence is at stake——and proof at a suppression hearing. In McCray v. Illinois, 386 U.S. 300 (1967), the Court explained it never held that, as an evidentiary principle, "an informer's identity need always be disclosed in a federal criminal trial, let alone in a preliminary hearing to determine probable cause for an arrest or search." Id. at 312. Faced with an undeveloped challenge to an unidentified informant's absence from a suppression hearing, the Court succinctly noted, "Petitioner also presents the contention here that he was unconstitutionally deprived of the right to confront a witness against him, because the State did not produce the informant to testify against him. This contention we consider absolutely devoid of merit." Id. at 313-14 (emphasis added) (quoting Cooper v. California, 386 U.S. 58, 62 n.2 (1967)). Where testimony by the arresting officers at the suppression hearing was sufficient to establish probable cause for the arrest and resultant search, id. at 304, the

12

confidential informant's absence did not violate the Sixth Amendment.[10]

¶19 Elsewhere, the Court made more explicit the connection between criminal trials and the Sixth Amendment's guarantee of confrontation and cross-examination. Four members of the Court endorsed a concise statement on the matter in Pennsylvania v. Ritchie, 480 U.S. 39 (1987): "[T]he right to confrontation is a trial right . . . ." Id. at 52 (plurality). In California v. Green, 399 U.S. 149 (1970), the Court declared, "[I]t is [the] literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause . . . ." Id. at 157. Earlier, in Barber v. Page, 390 U.S. 719 (1968), the Court described a clear connection between the confrontation right and particular stages of a criminal case:

> The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial.

Id. at 725.

---

[10] A few years later, the Court confirmed the Sixth Amendment implications of its decision in McCray, observing that it had "specifically rejected the claim that defendant's right to confrontation under the Sixth Amendment and Due Process Clause of the Fourteenth Amendment had in any way been violated." United States v. Matlock, 415 U.S. 164, 175 (1974).

¶20 Consistent with the Supreme Court's implicit and explicit characterizations of the Confrontation Clause, this court recently held that "[o]ur caselaw establishes that the Confrontation Clause does not apply to preliminary examinations." State v. O'Brien, 2014 WI 54, ¶30, 354 Wis. 2d 753, 850 N.W.2d 8 (first citing State ex rel. Funmaker v. Klamm, 106 Wis. 2d 624, 634, 317 N.W.2d 458 (1982)); then citing State v. Oliver, 161 Wis. 2d 140, 146, 467 N.W.2d 211 (Ct. App. 1991); and then citing State v. Padilla, 110 Wis. 2d 414, 422, 329 N.W.2d 263 (Ct. App. 1982)). The primary case on which this court relied explained that the "purpose of a preliminary hearing is quite different from a trial" because "the defendant's guilt need not be proven beyond a reasonable doubt." Funmaker, 106 Wis. 2d at 634.

¶21 Wisconsin is not alone in interpreting the Confrontation Clause as protecting a trial right; numerous state and federal courts agree. Peterson v. California, 604 F.3d 1166, 1169-70 (9th Cir. 2010) ("[T]he right to confrontation is basically a trial right. . . . Accordingly, Crawford does not affect the . . . Supreme Court cases holding that the Confrontation Clause is primarily a trial right."); Whitman v. Superior Court, 820 P.2d 262, 271 (Cal. 1991) ("[T]he United States Supreme Court has repeatedly stated that '[t]he right to confrontation is basically a trial right.'" (quoting Barber, 390 U.S. at 725)); Blevins v. Tihonovich, 728 P.2d 732, 734 (Colo. 1986) (en banc); Leitch v. Fleming, 732 S.E.2d 401, 404 (Ga. 2012); People v. Blackman, 414 N.E.2d 246, 247-48 (Ill. App. Ct.

14

1980); State v. Sherry, 667 P.2d 367, 376 (Kan. 1983) ("The Sixth Amendment right of confrontation is a protection that exists at the trial of the defendant."); Oakes v. Commonwealth, 320 S.W.3d 50, 55 (Ky. 2010) ("[T]he U.S. Supreme Court has never held that the right to confront witnesses applies to pre-trial hearings. In fact, to the contrary, it has repeatedly described the right as a trial right."); State v. Daly, 775 N.W.2d 47, 66 (Neb. 2009) ("[I]t is well established that Confrontation Clause rights are trial rights that do not extend to pretrial hearings in state proceedings."); Sheriff v. Witzenburg, 145 P.3d 1002, 1004 (Nev. 2006) ("[C]onfrontation has historically been described as a trial right."); State v. Lopez, 2013-NMSC-047, ¶2, 314 P.3d 236 ("[T]he right of confrontation . . . applies only at a criminal trial where guilt or innocence is determined."); Commonwealth v. Tyler, 587 A.2d 326, 328 (Pa. Super. Ct. 1991) ("[T]he right to confrontation is a trial right."); State v. Timmerman, 2009 UT 58, ¶11, 218 P.3d 590 ("Barber, Green, and Ritchie establish Supreme Court precedent confining the Sixth Amendment Confrontation Clause to trial.").

¶22 Although we now address, for the first time, whether the Confrontation Clause applies at suppression hearings,[11]

---

[11] In State v. Frambs, 157 Wis. 2d 700, 460 N.W.2d 811 (Ct. App. 1990), the court of appeals observed that it saw "no evidence that the Supreme Court intended the protection of the confrontation clause to be available to a defendant in . . . pretrial situations." Id. at 704. The statement arose during an analysis based on Ohio v. Roberts, 448 U.S. 56 (1980), (continued)

courts in other states have already tackled the question in the post-Crawford era. The New Mexico Supreme Court presents a representative example, holding that "the Confrontation Clause does not apply to preliminary questions of fact elicited at a suppression hearing." State v. Rivera, 2008-NMSC-056, ¶13, 192 P.3d 1213. That court relied on Ritchie and Barber when explaining, "[T]he United States Supreme Court has held that a defendant's right to confront witnesses against him is primarily a trial right, not a pretrial right." Id., ¶¶13-14. The court added, "A trial focuses on the ultimate issue of an accused's guilt or innocence, whereas in a pretrial hearing the focus is generally on the admissibility of evidence." Id., ¶15. Recognizing the continued validity of that distinction in Supreme Court jurisprudence, the court emphasized that "recent cases continue to focus on the protections afforded a defendant at trial." Id., ¶18 (first citing Giles v. California, 554 U.S. 353, 357-58 (2008); then citing Crawford, 541 U.S. at 68).

¶23 Other courts reached similar conclusions. See, e.g., People v. Felder, 129 P.3d 1072, 1073-74 (Colo. App. 2005) (observing that "[n]othing in Crawford suggests that the Supreme Court intended to alter its prior rulings allowing hearsay at

---

which the Supreme Court overruled in Crawford v. Washington, 541 U.S. 36 (2004). Any effect on Frambs following Crawford's overruling of Roberts is irrelevant for our purposes here, as we conduct an independent, comprehensive review of the applicability of the Confrontation Clause at suppression hearings.

pretrial proceedings, such as a hearing on a suppression motion challenging the sufficiency of a search warrant," and reasoning that "had the Court intended the rule of Crawford to apply at the pretrial stage, it would have revisited its prior decisions refusing to recognize a Sixth Amendment right of pretrial confrontation"); State v. Woinarowicz, 2006 ND 179, ¶11, 720 N.W.2d 635 ("In Crawford, the United States Supreme Court did not indicate it intended to change the law and apply the Confrontation Clause to pretrial hearings. . . . The Sixth Amendment right to confrontation is a trial right, which does not apply to pretrial suppression hearings."); Vanmeter v. State, 165 S.W.3d 68, 74-75 (Tex. App. 2005) ("Crawford did not change prior law that the constitutional right of confrontation is a trial right, not a pretrial right . . . . We hold, therefore, that Crawford does not apply at pretrial suppression hearings."); see also Ebert v. Gaetz, 610 F.3d 404, 414 (7th Cir. 2010) ("[T]he court considered the statement at a suppression hearing, not . . . trial; the Confrontation Clause was not implicated." (citing United States v. Harris, 403 U.S. 573, 584 (1971) (plurality))); State v. Watkins, 190 P.3d 266, 270-71 (Kan. Ct. App. 2007); State v. Harris, 2008-2117 (La. 12/19/08), 998 So. 2d 55 (per curiam); State v. Williams, 960 A.2d 805, 819-20 (N.J. Super. Ct. App. Div. 2008); People v. Mitchell, 2 N.Y.S.3d 207, 209-10 (App. Div. 2015); State v. Brown, 2016-Ohio-1258, 61 N.E.3d 922, ¶¶13-15 (Ct. App., 2d Dist.); State v. Fortun-Cebada, 241 P.3d 800, ¶41 (Wash. Ct. App. 2010).

17

¶24 We agree with those jurisdictions in concluding that the Confrontation Clause does not apply during suppression hearings. At common law, the right to confront witnesses developed as a mechanism for assessing witness reliability in the presence of the fact-finder, and several decisions by the Supreme Court indicate the confrontation right protects defendants at trial——when guilt or innocence is at stake. See Ritchie, 480 U.S. at 52 (plurality); Green, 399 U.S. at 157; Barber, 390 U.S. at 725; Brinegar, 338 U.S. at 174-75. Presenting live witnesses at a suppression hearing undoubtedly strengthens testimony offered by the State,[12] but when cross-examination of a witness becomes impossible, the Confrontation Clause does not prohibit use of valuable evidence, such as the video at issue here.

¶25 It is important to recognize the dissimilarity between the inquiry at trial and the inquiry at suppression hearings: while the purpose of a trial is to ascertain a defendant's guilt or innocence, the function of a suppression hearing is to

---

[12] We therefore do not share the concern, articulated by the dissents both here and at the court of appeals, that our holding will reduce suppression hearings "to a paper review in which trial courts read police reports and review evidence such as dash cam videos to determine whether a warrantless search or seizure was nevertheless lawful." Dissent, ¶85 (quoting Zamzow, 366 Wis. 2d 562, ¶22 (Reilly, J., dissenting)). Because of the weight live testimony carries when it emerges intact from the gauntlet of cross-examination, a prosecutor has no incentive to intentionally weaken the State's own case by failing to bring an available witness before the court to defend against a defendant's suppression motion.

determine whether the police violated the defendant's constitutional rights. In McCray, the Supreme Court explained that the suppression hearing implicates a lesser concern than the trial itself:

> We must remember . . . that we are not dealing with the trial of the criminal charge itself. There the need for a truthful verdict outweighs society's need for the informer privilege. Here, however, the accused seeks to avoid the truth. The very purpose of a motion to suppress is to escape the inculpatory thrust of evidence in hand, not because its probative force is diluted in the least by the mode of seizure, but rather as a sanction to compel enforcement officers to respect the constitutional security of all of us under the Fourth Amendment. If the motion to suppress is denied, defendant will still be judged upon the untarnished truth.

386 U.S. at 307 (citation omitted) (quoting State v. Burnett, 201 A.2d 39, 44 (N.J. 1964)). The proceedings here reveal the gulf between these inquiries. Although the circuit court did consider Birkholz's statement when evaluating reasonable suspicion, the jury that actually convicted Zamzow at trial never heard the audio recording. Birkholz's statement itself played no part in the determination of guilt or innocence. Zamzow was "judged upon the untarnished truth." Id.

¶26 While the Supreme Court has applied the Public Trial and Counsel Clauses of the Sixth Amendment to certain pretrial hearings, Waller v. Georgia, 467 U.S. 39 (1984); Coleman v. Alabama, 399 U.S. 1 (1970), tellingly, it has not done so with respect to the Confrontation Clause. Cases holding that the Public Trial and Counsel Clauses apply during pretrial proceedings base their conclusions on the nature of the rights

19

those clauses protect. See Waller, 467 U.S. at 46-47; Coleman, 399 U.S. at 9-10 (plurality); id. at 11-12 (Black, J., concurring). Here, elevating suppression hearings to a level of constitutional significance on par with trials would contravene the clear distinction the Supreme Court has described between pretrial hearings and the trial itself for Confrontation Clause purposes. The Court never nullified that distinction in Crawford or any subsequent Confrontation Clause case, and we will not adopt such a construction here. Because the Court has made clear that the interests protected by the confrontation right specifically target the determination of guilt or innocence, the justifications underpinning application of the Public Trial and Counsel Clauses of the Sixth Amendment to pretrial proceedings do not logically attach to the Confrontation Clause.[13]

¶27 In light of the longstanding principle that the Confrontation Clause protects a trial right, we conclude the Confrontation Clause does not require confrontation of witnesses at suppression hearings. By relying on Birkholz's recorded

---

[13] Accusing us of placing form ahead of substance, the dissent insists that "the temporal factor does not control" whether the Confrontation Clause applies. Dissent, ¶¶51-52. We agree. As demonstrated by our review of historical evidence and Supreme Court decisions, we choose to join other jurisdictions in holding that the confrontation right is a trial right not out of "cursor[y] rel[iance] on . . . references to 'at trial' in United States Supreme Court cases," dissent, ¶48, but because we are persuaded that the confrontation right applies to testimony before a finder of fact weighing the ultimate question of a defendant's guilt or innocence.

audio statement to make a reasonable suspicion determination, the circuit court did not deny Zamzow his right to confrontation under the Sixth Amendment.[14]

### B. Due Process

¶28 The Fourteenth Amendment to the United States Constitution provides: "No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." As an alternative to his Confrontation Clause argument, Zamzow contends the circuit court denied him due process of law at the suppression hearing by relying on the audio recording of Birkholz's statements without any possibility of cross-examination, quoting Goldberg v. Kelly, 397 U.S. 254, 269 (1970): "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."

¶29 We agree with the court of appeals that clear precedent from the Supreme Court undermines Zamzow's due process argument. In many of the Confrontation Clause cases discussed above, the Supreme Court also addressed alleged due process violations. Drawing those cases together, the Court explained that the distinction between trials and pretrial hearings applies in the due process context, too:

> This Court . . . has noted that the interests at stake in a suppression hearing are of a lesser

---

[14] Because we conclude the Confrontation Clause did not require confrontation at the suppression hearing, we need not determine whether Birkholz's statement was testimonial.

> magnitude than those in the criminal trial itself. At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial. United States v. Matlock, 415 U.S. 164, 172-174 (1974); Brinegar v. United States, 338 U.S. 160, 172-174 (1949). Furthermore, although the Due Process Clause has been held to require the Government to disclose the identity of an informant at trial, provided the identity is shown to be relevant and helpful to the defense, Roviaro v. United States, 353 U.S. 53, 60-61 (1957), it has never been held to require the disclosure of an informant's identity at a suppression hearing. McCray v. Illinois, 386 U.S. 300 (1967). We conclude that the process due at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself.

United States v. Raddatz, 447 U.S. 667, 679 (1980) (citation omitted). Any right to confrontation and cross-examination implicated by the Due Process Clause is therefore relaxed at a suppression hearing.

¶30 Ultimately, "due process is flexible and calls for such procedural protections as the particular situation demands." State v. Chamblis, 2015 WI 53, ¶54, 362 Wis. 2d 370, 864 N.W.2d 806 (alteration omitted) (quoting Gilbert v. Homar, 520 U.S. 924, 930 (1997)). Here, Birkholz's death rendered him unavailable to testify at the suppression hearing. But testimony by Beck established that the recording from the dashboard camera on Birkholz's squad car accurately and continuously documented the portions of the stop observed by Beck. The audio portion of that same continuous recording captured a statement made by Birkholz to Zamzow before Beck's arrival on the scene. The circuit court's reliance on that

22

hearsay statement did not offend the reduced standard for due process of law required at a suppression hearing.

### IV.  CONCLUSION

¶31 The right to confrontation arose at common law as a tool to test witness reliability at trial.  With the advent of pretrial evidentiary hearings during the twentieth century, the Supreme Court has signaled that the right to confrontation persists as a trial protection and does not apply during pretrial proceedings.  The Sixth Amendment guarantees that a defendant whose guilt or innocence is at stake at trial may employ the "greatest legal engine ever invented for the discovery of truth."  Green, 399 U.S. at 158 (quoting 5 John Henry Wigmore, Evidence § 1367 (3d ed. 1940)).  But the Sixth Amendment does not mandate that statements considered at a suppression hearing face the crucible of cross-examination.  Nor does the Due Process Clause demand this.  Accordingly, we conclude that the circuit court did not deny Zamzow his rights under the Sixth and Fourteenth Amendments to the Constitution by relying on an audio recording of a deceased officer's statement at the suppression hearing.

*By the Court.*—The decision of the court of appeals is affirmed.

23

¶32 SHIRLEY S. ABRAHAMSON, J. *(dissenting).* The Sixth Amendment to the United States Constitution enumerates an accused's rights "in all criminal prosecutions." Glenn T. Zamzow, convicted of drunk driving, asserts that he was denied his Sixth Amendment enumerated right "to be confronted with the witnesses against him" during a hearing on his motion to suppress evidence. The majority opinion declares, without equivocation, that no such right exists.

¶33 The United States Supreme Court has not squarely addressed the issue presented in the instant case. Thus, to decide the instant case the majority opinion must predict, on the basis of case law tackling other questions, what the United States Supreme Court will do when it has the opportunity to decide the issue presented in the instant case.

¶34 The Sixth Amendment to the United States Constitution states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence. (Emphasis added.)

¶35 The instant case involves a Fourth Amendment suppression hearing,[1] not a preliminary examination. The two are

---

[1] The defendant asserts that the stop of his vehicle was unlawful and therefore that all evidence derivative of the stop should be suppressed.

1

very different. Cases cited by the majority opinion relating to preliminary examinations are not relevant to the instant case.[2]

¶36 To put the instant case in context, the Sixth Amendment Confrontation Clause is implicated when the declarant's statement is testimonial. Crawford v. Washington, 541 U.S. 36 (2004). Majority op., ¶27 n.14. The circuit court found that some of the declarant's (here Officer Birkholz's) statements were testimonial and some were not. Silently assuming that all the evidence at issue is testimonial, the court of appeals and the majority opinion do not determine

---

[2] Neither a constitutional nor a statutory right of confrontation exists in a preliminary examination in Wisconsin. Wis. Stat. § 970.038; State v. O'Brien, 2014 WI 54, ¶¶30-31, 354 Wis. 2d 753, 850 N.W.2d 8.

In a preliminary examination, the question is whether there is probable cause to hold the accused for trial. See majority op., ¶17.

The United States Supreme Court has held that a probable cause determination for the sole purpose of pretrial detention does not require the full panoply of adversarial safeguards, including confrontation. This type of pretrial proceeding does not impair the accused's defense on the merits. Gerstein v. Pugh, 420 U.S. 103, 119 (1975); United States v. Green, 670 F.2d 1148, 1154 n.8 (D.C. Cir. 1981).

In a suppression hearing, the question is what evidence will be admitted at trial to determine guilt. A suppression hearing is a more searching exploration into the merits of the case than a preliminary examination.

2

whether the evidence is testimonial under Crawford.[3] Apparently, it is easier for the majority opinion to answer the constitutional confrontation question regarding suppression hearings than to answer whether the evidence of Zamzow's driving and law enforcement's stop is testimonial. I take on the same question the majority opinion does.

¶37 I conclude that the Sixth Amendment confrontation right applies at suppression hearings. My analysis will proceed as follows:

I. The text and history of the Sixth Amendment enumerating the confrontation right "in all criminal prosecutions" informs the interpretation of the confrontation right at a suppression hearing. Cross-examination is the core of the confrontation right.

II. The phrase "in all criminal prosecutions" in the Sixth Amendment is not limited to what occurs at trial. In any event, at the time of the adoption

---

[3] "Testimonial statements of witnesses absent from trial" violate a defendant's confrontation right unless "the declarant is unavailable, and . . . the defendant has had a prior opportunity to cross-examine." Crawford v. Washington, 541 U.S. 36, 59 (2004). Whether statements of different types and contexts are testimonial has been progressively defined by the Court since Crawford: "[T]o rank as 'testimonial,' a statement must have a 'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." Bullcoming v. New Mexico, 564 U.S. 647, 659 n.6 (2011) (quoting Davis v. Washington, 547 U.S. 813, 822 (2006)).

Court of Appeals Judge Paul Reilly concluded that Officer Birkholz's statement that Zamzow crossed the center line prior to the stop was testimonial, as it described a past event with the purpose of establishing or proving that event in a later criminal prosecution and was made by an officer who intended to bear testimony in that prosecution. State v. Zamzow, 2016 WI App 7, ¶17, 366 Wis. 2d 562, 874 N.W.2d 328.

3

of the Sixth Amendment, suppression hearings were generally conducted at trial.

  III. The United States Supreme Court's interpretation of the textual phrase "in all criminal prosecutions" in applying an enumerated Sixth Amendment right other than the confrontation right informs the interpretation of the Sixth Amendment confrontation right. The Sixth Amendment Counsel, Compulsory Process, and Confrontation Clauses are structurally identical.

    A. Enumerated Sixth Amendment rights attach to non-trial critical stages in a criminal prosecution.

    B. The purpose and function of a proceeding in a criminal prosecution determines the application of an enumerated Sixth Amendment right.

I

¶38 I start where the majority opinion starts——with the text of the Sixth Amendment enumerating rights "in all criminal prosecutions." The text informs the interpretation of the confrontation right. Majority op., ¶13.

¶39 The constitutional text alone might not resolve the instant case, but it helps a great deal.[4] The very words "in all criminal prosecutions" signify that the confrontation right is guaranteed in proceedings before, during, and after the trial.[5] Unfortunately, the majority opinion does not seriously engage with the text of the Sixth Amendment.

---

[4] In writing Crawford, a seminal Confrontation Clause case, Justice Scalia acknowledged that the Sixth Amendment's text alone does not resolve how to apply the Confrontation Clause. Crawford, 541 U.S. at 42-43.

[5] Coleman v. Alabama, 399 U.S. 1, 14 (1970) (Douglas, J., concurring).

4

¶40 The majority opinion in the instant case, without careful attention to Justice Scalia's historical analyses of confrontation in Crawford, looks to history. It limits its historical research and its originalist view of "in all criminal prosecutions" and the Confrontation Clause to some old dictionaries, Blackstone's Commentaries, and one 1895 United States Supreme Court case.[6] See majority op., ¶¶14-16. As the majority opinion correctly acknowledges, its historical analysis is not illuminating.

¶41 Justice Scalia's and Chief Justice Rehnquist's historical analyses of the Confrontation Clause in Crawford are helpful in the instant case. To understand the meaning of the Sixth Amendment Confrontation Clause, Justice Scalia turned to the historical background of the Clause, devoting a significant part of his opinion to this endeavor. The Justice examined details of English common law, colonial American practice, and American cases. He used diverse sources such as English and

---

[6] Mattox v. United States, 156 U.S. 237 (1895). The majority opinion, ¶15, cites Mattox for the proposition that the Constitution is interpreted in light of the law existing when it was adopted. In ¶16, the majority opinion quotes from Mattox to emphasize the trial-oriented protections of the confrontation right. The Mattox language quoted by the majority opinion states that the "primary object" of the Confrontation Clause is to prevent convictions based on depositions and ex parte affidavits. Applying the Confrontation Clause at a suppression hearing may result in the suppression of the use of depositions and ex parte affidavits at trial.

Justice Scalia explains Mattox's holding to be that prior trial or preliminary hearing testimony is admissible at trial only if the defendant had an adequate opportunity to cross-examine the witness before trial. Crawford, 541 U.S. at 57.

5

American cases; histories of English law; histories of the Sixth Amendment; evidence, criminal law, and constitutional law texts; law review articles; and nineteenth-century treatises. Chief Justice Rehnquist's concurrence in the Crawford judgment proffered its own extensive view of historical evidence on the meaning of the Confrontation Clause.[7]

¶42 These analyses are edifying for purposes of this writing. The history demonstrates that the right of confrontation was very important in Roman, English, and American legal history. From this history, the following precepts can be drawn from Crawford about the confrontation right:

- The English common-law tradition is one of live testimony in court subject to adversarial testing.[8]

- "Nothing can be more essential than the cross examining [of] witnesses, and generally before the triers of the facts in question . . . ."[9]

---

[7] For additional historical analyses of the Confrontation Clause, see Benjamin C. McMurray, Challenging Untested Facts at Sentencing: The Applicability of Crawford at Sentencing After Booker, 37 McGeorge L. Rev. 589, 605-08 (2006); Shaakirrah R. Sanders, Unbranding Confrontation as Only a Trial Right, 65 Hastings L.J. 1257, 1261-66 (2014).

Cf. California v. Green, 399 U.S. 149, 173-74 (1970) (Harlan, J., concurring) ("[T]he Confrontation Clause comes to us on faded parchment. History seems to give us very little insight into the intended scope of the Sixth Amendment Confrontation Clause.").

[8] Crawford, 541 U.S. at 43.

[9] Crawford, 541 U.S. at 49 (quoted source omitted).

6

- Many early American cases demonstrate that prosecutions are carried on to conviction by witnesses confronted by the accused and subjected to the accused's personal examination.[10]

- "[T]he common law in 1791 [when the Sixth Amendment was adopted] conditioned admissibility of an absent witness's examination on unavailability and a prior opportunity to cross-examine. The Sixth Amendment therefore incorporates those limitations."[11]

- The historical sources do not say "that a prior opportunity to cross-examine was merely a sufficient, rather than a necessary, condition for admissibility of testimonial statements. They suggest that this requirement was dispositive."[12]

- The Confrontation Clause reflects the judgment that reliability of evidence is tested "in the crucible of cross-examination."[13]

---

[10] Crawford, 541 U.S. at 49-50 (citations omitted).

[11] Crawford, 541 U.S. at 54.

[12] Crawford, 541 U.S. at 55.

[13] Crawford, 541 U.S. at 61. "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Crawford, 541 U.S. at 68-69.

"Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes." Crawford, 541 U.S. at 62.

7

¶43 In sum, the text and historical analyses of the Confrontation Clause lead to the conclusion that the confrontation right is of great significance in Anglo-American jurisprudence and that the significance of the confrontation right lies in the accused's right to cross-examine a witness.

II

¶44 The majority opinion rests its conclusion on its certitude that the accused's right of confrontation is limited to the trial. Majority op., ¶¶17-21. This purported certitude has no basis in the text of the Sixth Amendment. The text of the Sixth Amendment does not use the word "trial" in stating the accused's confrontation right. In comparison, the accused's Sixth Amendment right to "enjoy the right to a speedy and public trial" explicitly refers to "speedy and public" as a trial right.

¶45 Indeed, the United States Supreme Court has never explicitly held that the Confrontation Clause is an accused's right at trial only.[14]

---

[14] In McCray v. Illinois, 386 U.S. 300, 305 (1967), the Court tacitly assumed that the Confrontation Clause applies to a suppression hearing. In that case, the Court concluded that a defendant could not ask for the name of a confidential informant during cross-examination at a suppression hearing, citing the confidential informant privilege. McCray held that the Clause was not violated by limiting cross-examination; it did not hold that the Clause was inapplicable to a suppression hearing. The McCray Court distinguished between suppression hearings and trials (in which guilt is determined) in balancing the application of an informer privilege. McCray, 386 U.S. at 307.

(continued)

8

¶46 True, the Court has referred to confrontation as a trial right or a right at trial in its discussion of the Sixth Amendment. But these references have been in the context of cases involving trials.[15] It makes good sense to confine an opinion's discussion to the facts presented——which, in each of the Court's cases referenced by the majority opinion, was a trial. It does not make good sense to extrapolate from these decisions that the confrontation right is exclusively a right at trial.[16]

---

Recognizing a Sixth Amendment confrontation right at a suppression hearing does not mean that the confrontation right at the suppression hearing has no limits. Indeed the limits on the right to confrontation at a suppression hearing and at trial are not necessarily the same. The majority opinion misses this point when it implies that Professor LaFave's writings are inconsistent on the question whether a right to confrontation exists at a suppression hearing. See majority op., ¶12 n.6.

[15] See, e.g., California v. Green, 399 U.S. 149, 157 (1970) ("it is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause"); Barber v. Page, 390 U.S. 719, 725-26 (1968) (the confrontation right encompasses "the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness").

[16] Indeed the Court has recently indicated that the "trial right" reading of the Confrontation Clause may be erroneous. See, e.g., Melendez-Diaz v. Massachusetts, 557 U.S. 305, 315 (2009) (in discussing a paradigmatic historical example of a violation of the Confrontation Clause, the Court noted that the rejection of ex parte affidavits at trial is "the core of the right to confrontation, not its limits.").

I conclude that although an accused's right of confrontation at a suppression hearing may not be the "core" of the Confrontation Clause, it is within its limits.

¶47 A suppression hearing affects the trial and the ultimate question of a defendant's guilt or innocence. If evidence is not suppressed at the suppression hearing, it can be introduced at trial. An issue not discussed by the majority opinion but of importance is the defendant's ability to raise the suppression issue again at trial.[17] If the right of confrontation is not available to the defendant at the suppression hearing, but is available at trial, will the defendant have the right to relitigate the suppression ruling at trial when the constitutional guarantee of confrontation is in effect? If so, what is the purpose of the suppression hearing? If the defendant pleads guilty, does he or she waive the right to raise the confrontation issue on appeal? If so, is the Wisconsin statute allowing a defendant to appeal the denial of a motion to suppress effective? See majority op., ¶26 n.13; see also Curry v. Texas, 228 S.W.3d 292, 298 (Tex. Ct. App. 2007).

¶48 Nevertheless, the majority opinion joins courts in other jurisdictions cursorily relying on these references to "at trial" in United States Supreme Court cases to eliminate the confrontation right at a suppression hearing.[18] See, e.g., majority op., ¶21 (collecting cases).

---

[17] See 6 Wayne R. LaFave et al., Search and Seizure § 11.2(f), at 110-22 (5th ed. 2012).

[18] See e.g., State v. Rivera, 192 P.3d 1213, ¶14 (N.M. 2008) ("[T]he United States Supreme Court has held that a defendant's right to confront witnesses against him is primarily a trial right . . . ."); State v. Woinarowicz, 720 N.W.2d 635, 641 (N.D. 2006) ("The Sixth Amendment right to confrontation is a trial right, which does not apply to pretrial suppression hearings.").

10

¶49 Not only is this conclusion devoid of substantial analysis and support in the cases cited, it is also devoid of historical support.[19] Historically, the suppression of unconstitutionally obtained evidence occurred during the trial.[20] "Indeed, the modern suppression hearing, unknown at common law, is a type of objection to evidence such as took place at common law . . . in open court . . . ." *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 437 (1979) (Blackmun, J., concurring in part and dissenting in part).[21] *See also* I Joseph Chitty, *A*

---

[19] By contrast, see 6 Wayne R. LaFave et al., Search and Seizure § 11.2(d), at 92 (5th ed. 2012), concluding that the right of confrontation applies at a Fourth Amendment suppression hearing.

[20] See, e.g., 3 Wayne R. LaFave, Criminal Procedure § 10.1(a) (4th ed. 2016) ("At one time, it was not uncommon for states to treat objections to illegally obtained evidence as subject to the usual principle that the admissibility of evidence is determined when it is tendered and not in advance of trial. A few jurisdictions still follow [this approach] . . . .") (internal quotation marks omitted).

See, e.g., State v. Allen, 183 Wis. 323, 197 N.W. 808 (1924) (motion to suppress illegally obtained evidence brought during trial, when prosecution seeks to use the evidence).

[21] See also Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 395-96 (1979) (Burger, C.J., concurring) ("When the Sixth Amendment was written, and for more than a century after that, no one could have conceived that the exclusionary rule and pretrial motions to suppress evidence would be part of our criminal jurisprudence.").

See also North Carolina v. Wrenn, 417 U.S. 973 (1974) (White, J., dissenting from denial of certiorari) ("Evidence used against [the defendant] at trial was seized under a search warrant issued by a magistrate on an affidavit which was sustained at trial after an evidentiary hearing out of the presence of a jury.").

Practical Treatise on the Criminal Law 571 (5th ed. 1847) ("The practice . . . at present, is for the prosecutor's counsel, on his examination of his own evidence in chief, to inquire of the witnesses all the facts, so as to satisfy the jury that the confession was voluntarily made, and duly taken.").

¶50 As the years passed, however, courts began hearing suppression motions before trial instead of at trial. Moving the suppression hearing up in time in a criminal prosecution to precede the trial offered greater judicial convenience and efficiency, and it prevented delay while a jury was sitting.[22] Indeed, federal and Wisconsin rules of criminal procedure now generally require that defendants bring a motion to suppress evidence before trial.[23]

---

[22] Jones v. United States, 362 U.S. 257, 264 (1960), overruled on other grounds by United States v. Salvucci, 448 U.S. 83 (1980):

> In the interest of normal procedural orderliness, a motion to suppress, under Rule 41(e), must be made prior to trial, if the defendant then has knowledge of the grounds on which to base the motion. . . . This provision of Rule 41(e), requiring the motion to suppress to be made before trial, is a crystallization of decisions of this Court requiring that procedure, and is designed to eliminate from the trial disputes over police conduct not immediately relevant to the question of guilt.

[23] See, e.g., Federal Rule of Criminal Procedure Rule 12(e); United States v. White, 584 F.3d 935, 948 (10th Cir. 2009):

> Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure requires that a party raise a motion to suppress before trial. A party who fails to do so "waives any Rule 12(b)(3) defense, objection, or request," although "[f]or good cause, the court may grant relief from the waiver." Fed. R. Crim. P.

(continued)

12

¶51 That a suppression hearing has changed temporal location does not detract from its ultimate goal of excluding illegally obtained evidence at trial and should not influence the application of the accused's confrontation right. Interpreting the accused's constitutional confrontation right on the basis of when it is asserted is contrary to the general rule that form is not placed over substance and is contrary to tenets of constitutional law. "A rule of practice must not be allowed for any technical reason to prevail over a constitutional right." Gouled v. United States, 255 U.S. 298, 313 (1921); abrogated on other grounds by Warden, Md. Penitentiary v. Hayden, 387 U.S. 294 (1967).

¶52 Justice Blackmun got it right. He concluded that "for purposes of applying the public-trial provision of the Sixth Amendment" to a suppression hearing, the temporal factor does not control the analysis. Gannett Co., Inc. v. DePasquale, 443 U.S. at 436-37 (Blackmun, J., concurring in part and dissenting in part).

¶53 In sum, the broad text of the Sixth Amendment in the phrase "in all criminal prosecutions" and the fact that suppression hearings were conducted at trial at the time of the

---

12(e). This waiver rule applies not only when a defendant fails to file any pretrial motion to suppress, but also when a defendant fails to assert a particular argument in a pretrial suppression motion that he did file.

See also Wis. Stat. § 971.31(2) ("[O]bjections based on . . . the use of illegal means to secure evidence shall be raised before trial by motion or be deemed waived. . . .")

13

adoption of the Sixth Amendment lead to the conclusion that the accused's Sixth Amendment confrontation right may be asserted at the suppression hearing.

III

¶54 I next examine the United States Supreme Court's interpretations of the Sixth Amendment text "in all criminal prosecutions" in applying an enumerated Sixth Amendment right other than the confrontation right. These interpretations inform the interpretation of the Sixth Amendment confrontation right because the Sixth Amendment Counsel, Compulsory Process, and Confrontation Clauses are structurally identical.

A

¶55 In its cases interpreting and applying the enumerated Sixth Amendment right to counsel, the Court has interpreted the Sixth Amendment text "in all criminal prosecutions" to mean at "critical stages" of the criminal prosecution. Coleman v. Alabama, 399 U.S. 1, 7 (1970).[24]

---

[24] See Coleman v. Alabama, 399 U.S. 1, 7 (1970) (an accused "requires the guiding hand of counsel at every step in the proceedings against him") (quoting Powell v. Alabama, 287 U.S. 45, 69 (1932)); United States v. Wade, 388 U.S. 218, 336 (1967) ("It is central to that principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial.") (emphasis added).

Coleman involved a pretrial hearing to determine whether there was sufficient evidence against the accused to warrant proceeding with the criminal prosecution.

¶56 A critical stage is any stage in a criminal prosecution, "formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial . . . as affected by his right to meaningfully cross-examine the witnesses against him. . . ." United States v. Wade, 388 U.S. 218, 226-27 (1967) (emphasis added) (relating to counsel at post indictment line-up).[25] In applying the right to counsel and determining the critical stage, a court scrutinizes the pretrial proceeding to determine whether counsel is "necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself." Coleman, 399 U.S. at 7. The efficacy of an accused's right to counsel is diminished without an accused's confrontation right. Examining witnesses is an area of counsel's expertise.

¶57 The Court's focus on giving a defendant the right to counsel at a pretrial proceeding to ensure the defendant's constitutional right to a fair trial and cross-examination implies that a suppression hearing (inherently tied to fair

---

[25] The Sixth Amendment right to counsel applies at "critical stages" of the criminal prosecution when there is "potential substantial prejudice to [the] defendant's rights" that "confrontation and the ability of counsel [helps to] avoid. . . ." Wade, 388 U.S. at 227.

See also State v. Curry, 147 P.3d 483, 485-86 (Utah Ct. App. 2006) (concluding that the suppression hearing is a critical stage where counsel must be present to cross-examine the prosecution's witness).

15

trial and cross-examination) is a critical stage in criminal prosecutions.[26]

¶58 The Wisconsin supreme court has long recognized that the confrontation right "is an essential and fundamental requirement for a fair trial." State v. Bauer, 109 Wis. 2d 204, 208, 325 N.W.2d 857 (1982) (citation omitted).

¶59 Courts in several jurisdictions recognize the applicability of the Sixth Amendment confrontation right at suppression hearings on the ground that the suppression hearing is a critical stage in a criminal prosecution that requires cross-examination to ensure a fair trial.[27] The Seventh Circuit

---

[26] "The security of that right is as much the aim of the right to counsel as it is of the other guarantees of the Sixth Amendment . . . [including] his right to be confronted with the witnesses against him . . . ." United States v. Wade, 388 U.S. 218, 226-27 (1967).

[27] See, e.g., Curry v. State, 228 S.W.3d 292, 297 (Tex. Ct. App. 2007) (the Confrontation Clause applies at a suppression hearing because it is a "critical stage" of the criminal prosecution); State v. Sigerson, 282 So. 2d 649, 651 (Fla. App. 1973) ("The hearing on the motion to suppress, while not deciding the guilt or innocence of the appellee, is clearly a critical stage of the prosecution and the confrontation clause of the Sixth Amendment to the United States constitution guarantees an accused in a criminal case the right to confront the witnesses against him."); United States v. Hodge, 19 F.3d 51, 53 (D.C. Cir. 1994) (a suppression hearing is a critical stage of the prosecution and "any limitations on the right of cross-examination . . . must be justified by weighty considerations") (internal quotation marks and citations omitted). See also United States v. Clark, 475 F.2d 240, 246-47 (2d Cir. 1973) (the defendant has a right to be present at a pretrial suppression hearing "held to determine the constitutionality of a seizure of evidence from an accused"; defendant was "entitled to assist his counsel in cross-examining [the prosecution's] witnesses and in developing [ ] matters further at the suppression hearing.").

(continued)

16

Court of Appeals has declared that "a pretrial suppression hearing is a critical stage." United States v. Johnson, 859 F.2d 1289, 1294 (7th Cir. 1988).[28]

¶60 Judge Harry Edwards wrote that the suppression hearing is a critical stage of the prosecution because it "affects substantial rights of an accused person; the outcome of the

---

Professor LaFave in 6 Search & Seizure, § 11.2(d), at 93 n. 217, cites the following cases in support of a confrontation right at suppression hearings:

- United States v. Mejia, 69 F.3d 309 (9th Cir. 1995) (where suppression hearing aborted because of illness of judge and new hearing held before another judge, it error for that judge merely to read transcript of some prosecution witnesses' testimony at aborted hearing; continuance should have been granted "so that the government's two main witnesses would testify in person and be cross-examined in front of the judge who would be required to assess their credibility").

- People v. Levine, 585 N.W.2d 770 (Mich. App. 1998) (citing cases from other states in support of conclusion that "the protections of the Confrontation Clause extend to a pretrial suppression hearing") (the Michigan Supreme Court vacated this decision on other grounds, and did not address the appellate court's decision that the Confrontation Clause applies at suppression hearings).

- State v. Ehtesham, 309 S.E.2d 82 (W. Va. 1983) (suppression hearing should be "a meaningful hearing, at which both the state and the defendant should be afforded the opportunity to produce evidence and to examine and cross-examine witnesses"; defendant's right denied where judge refused defense opportunity to cross examine officer who obtained search warrant).

[28] See also People v. Strothers, 928 N.Y.S.2d 28 (N.Y. App. Div. 2011) (the suppression hearing is a critical stage and trial judge's decision to proceed without defendant's counsel, who was running late, was reversible error).

hearing——the suppression vel non of evidence——may often determine the eventual outcome of conviction or acquittal." United States v. Green, 670 F.2d 1148, 1154 (D.C. Cir. 1981). The Green court declared that because of the historical and practical importance of the right of cross-examination, any limitations on the right at the suppression hearing must be justified by weighty considerations. Green, 670 F.2d at 1154.[29] I agree.

¶61 In interpreting the Sixth Amendment Confrontation Clause, the majority opinion errs in failing to consider the right to a fair trial and the significant role of cross-examination.

¶62 A federal court of appeals has written of the right of cross-examination as follows: "So basic is the right [to cross-examine witnesses] that the Supreme Court has held that its denial, 'without waiver . . . would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.'" Proffitt v. Wainwright, 685 F.2d

---

[29] A limitation on the right of confrontation at a suppression hearing is an informer's privilege. See United States v. Green, 670 F.2d 1148, 1154 (D.C. Cir. 1981).

1227, 1251 (11th Cir. 1982) (quoting Smith v. Illinois, 390 U.S. 129, 131 (1968)).[30]

¶63 In sum, the United States Supreme Court has indicated that the Sixth Amendment text "in all criminal proceedings" includes a pretrial proceeding that lays the groundwork for a fair trial and enables the accused to cross-examine witnesses. Thus the Court's cases have kept the door open for an accused's Sixth Amendment confrontation right to apply at a suppression hearing. Looking to the critical stage analysis, I conclude that the confrontation right should apply at suppression hearings to permit cross-examination, which promotes a fair trial.

B

¶64 In its cases interpreting and applying enumerated Sixth Amendment rights, the Court has interpreted and applied the Sixth Amendment text "in all criminal prosecutions" by examining the purpose and function of the particular criminal proceeding. Whether the Court applies a Sixth Amendment right in a pretrial proceeding requires comparing the purpose and

---

[30] See also Davis v. Alaska, 415 U.S. 308, 315 (1974) (holding that adequate cross-examination is required by the Sixth Amendment and stating that "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested."); Douglas v. Alabama, 380 U.S. 415, 418 (1965) (stating that "[o]ur cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination . . . .").

function of the pretrial proceeding with the purpose and functions of the enumerated right and the trial.[31]

¶65 For example, the United States Supreme Court has declared that an accused's Sixth Amendment right to a public trial grants an accused the right to a public suppression hearing. In Waller v. Georgia, 467 U.S. 39 (1984), the Court described the function of the accused's Sixth Amendment public trial right as "ensuring that judge and prosecutor carry out their duties responsibly," "encourag[ing] witnesses to come forward," and "discourage[ing] perjury." Waller, 467 U.S. at 46.

¶66 The Waller Court reasoned that the accused's Sixth Amendment's right to a public trial extends to a pretrial suppression hearing because "[t]hese aims and interests [protected at trial] are no less pressing in a hearing to suppress wrongfully seized evidence." Waller, 467 U.S. at 46.

---

[31] See Shaakirrah R. Sanders, Unbranding Confrontation as Only a Trial Right, 65 Hastings L.J. 1257 (2014) (arguing that a defendant's right to confrontation at a non-trial proceeding is determined by analogizing the protection afforded by the Sixth Amendment at trial).

Although I do not further discuss these cases in the instant dissent, I note that other Sixth Amendment rights apply in criminal prosecutions beyond the trial. See, e.g., United States v. Bowe, 698 F.2d 560, 565 (2d Cir. 1983) (the Compulsory Process Clause applies at a suppression hearing, unless that witness invoked the Fifth Amendment); Mempa v. Riley, 389 U.S. 128, 136-37 (1967) (Counsel Clause applies at sentencing in Washington state probation revocation proceeding); Apprendi v. New Jersey, 530 U.S. 466, 476 (2000) (Jury Clause applies at sentencing fact-finding); Alleyne United States, 133 S. Ct. 2151 (2013) (Jury Clause applies at sentencing for fact-finding for a fact that increases the penalty).

20

¶67 Furthermore, the pretrial suppression hearing has in many instances supplanted the trial. The Waller Court recognized that for many defendants the suppression hearing is "the only trial, because the defendants [will] thereafter plead[] guilty . . . ." Waller, 467 U.S. at 47. The suppression hearing resembles a bench trial: witnesses are called; the defendant has a right to counsel who can question witnesses; the judge must find facts and apply legal principles to the facts found; the conduct of law enforcement officials is often reviewed at a suppression hearing. The Waller Court elaborated as follows:

> [A] suppression hearing often resembles a bench trial: witnesses are sworn and testify, and of course counsel argue their positions. The outcome frequently depends on a resolution of factual matters. The need for an open proceeding may be particularly strong with respect to suppression hearings. A challenge to the seizure of evidence frequently attacks the conduct of police and prosecutor. . . . [S]trong pressures are naturally at work on the prosecution's witnesses to justify the propriety of their conduct in obtaining the evidence.

Waller, 467 U.S. at 46-47 (internal quotation marks and citations omitted).

¶68 In effect, the Waller court recognized that suppression hearings are tantamount to trials, in both form and importance.

¶69 The purpose and function of an accused's Sixth Amendment right to a public trial echo the purpose and function of the exclusionary rule. The exclusion of evidence at trial is an accused's objective in a suppression hearing. The Wisconsin Supreme Court first adopted and applied the exclusionary rule in

21

Hoyer v. State, 180 Wis. 407, 193 N.W. 89 (1923). Since then, evidence has been excluded as a check on law enforcement. "Unlawful police conduct is deterred when evidence recovered in unreasonable searches is not admissible in courts."[32] State v. Tompkins, 144 Wis. 2d 116, 133-34, 423 N.W.2d 823 (1988); State v. Gums, 69 Wis. 2d 513, 516-17, 230 N.W.2d 813 (1975). See also Conrad v. State, 63 Wis. 2d 616, 635, 218 N.W.2d 252 (1974) (explaining that judicial integrity could be compromised if unlawful police conduct were sanctioned by the use of evidence obtained in violation of the Fourth Amendment).

¶70 Both the Public Trial Clause and the exclusionary rule are aimed at deterring unlawful conduct. This deterrent effect would be weakened if the Sixth Amendment right to public trial did not apply to a suppression hearing or the right to confrontation were not recognized in suppression hearings. Without an accused's confrontation right, the state's evidence will not be examined adequately at the suppression hearing.

¶71 In determining whether the Sixth Amendment right to a public trial applies to render a suppression hearing public, Justice Blackmun compared the purpose and function of the suppression hearing to the purpose and function of a trial. Justice Blackmun reasoned that the pretrial suppression hearing "resembles and relates to the full trial in almost every

---

[32] See also 1 Wayne R. LaFave et al., Search & Seizure § 1.1(f) (5th ed. 2012) ("[T]he deterrence of unreasonable searches and seizures is a major purpose of the exclusionary rule.").

22

particular," and therefore the Sixth Amendment right to a public trial requires a public suppression hearing. "[T]he pretrial suppression hearing . . . must be considered part of the trial." Gannett, 443 U.S. at 434, 436-37 (Blackmun, J., concurring in part and dissenting in part). The following characteristics of a suppression hearing led the Justice to this conclusion:

- "Evidence is presented by means of live testimony, witnesses are sworn, and those witnesses are subject to cross-examination."

- "Determination of the ultimate issue depends in most cases upon the trier of fact's evaluation of the evidence, and credibility is often crucial."

- "[T]he pretrial suppression hearing often is critical, and it may be decisive, in the prosecution of a criminal case. If the defendant prevails, he will have dealt the prosecution's case a serious, perhaps fatal, blow; the proceeding often then will be dismissed or negotiated on terms favorable to the defense. If the prosecution successfully resists the motion to suppress, the defendant may have little hope of success at trial (especially where a confession is

23

in issue), with the result that the likelihood of a guilty plea is substantially increased."[33]

- "The suppression hearing often is the only judicial proceeding of substantial importance that takes place during a criminal prosecution."

Gannett, 443 U.S. 434-36 (Blackmun, J., concurring in part and dissenting in part).

¶72 For Justice Blackmun, these factors led him to conclude that the suppression hearing——so much like a trial—— must, like a trial, be public under the Sixth Amendment.

¶73 These factors lead me to conclude that the suppression hearing——so much like a trial——must, like a trial, afford an accused the confrontation right.[34]

---

[33] "[A] decision on the motion to suppress is often outcome determinative if it is adverse to the government. Thus, from the prosecution's viewpoint, if evidence is suppressed, at worst, the case will be dismissed; at best, valuable evidence will be lost and the defendant will be in an enhanced plea bargaining position." Elizabeth Phillips Marsh, Does Evidence Law Matter in Criminal Suppression Hearings?, 25 Loy. L.A. L. Rev. 987, 996 (1992).

[34] The Fifth Circuit Court of Appeals stated that "we safeguard the right to cross-examination at the suppression hearing because the aims and interests involved in a suppression hearing are just as pressing as those in the actual trial." United States v. Stewart, 93 F.3d 189, 192 n.1 (5th Cir. 1996).

Justice Blackmun offered a similar approach in Kentucky v. Stincer, 482 U.S. 730 (1987), and Pennsylvania v. Ritchie, 480 U.S. 39 (1987). Justice Blackmun was persuaded that "there are cases in which a state rule that precludes a defendant from access to information before trial may hinder that defendant's opportunity for effective cross-examination at trial, and thus that such a rule equally may violate the Confrontation Clause." Kentucky v. Stincer, 482 U.S. at 738 n.9.

(continued)

24

¶74 The most striking aspect of the suppression hearing that leads me to this conclusion is that the suppression hearing is the turning point in many criminal prosecutions.[35] The majority opinion concedes (as it must) that "suppression hearings have become an important stage in many criminal cases since the Supreme Court adopted the exclusionary rule . . . ." Majority op., ¶17. Yet the majority opinion strangely suggests that guilt or innocence is not at stake in the suppression hearing. The majority opinion asserts that its conclusion that the confrontation right does not apply at suppression hearings is compelled because the "confrontation right protects defendants at trial——when guilt or innocence is at stake." Majority op., ¶24; see also majority op., ¶29.

---

Justice Blackmun raised the same point in his separate writing in Ritchie, in which he faulted the majority for limiting its confrontation analysis to whether cross-examination is available and not inquiring into the "effectiveness of cross-examination." Ritchie, 480 U.S. at 62; see also Ritchie, 480 U.S. at 71 (Brennan, J., dissenting) ("The creation of a significant impediment to the conduct of cross-examination thus undercuts the protections of the Confrontation Clause, even if that impediment is not erected at the trial itself.") (emphasis added).

In Ritchie, 480 U.S. at 54 n.10, Justice Powell, however, observed in his plurality opinion that the Court has not yet recognized a Confrontation Clause violation prior to trial.

[35] The significance of a decision in a suppression case is seen in Wis. Stat. § 808.03(3)(b), providing: "An order denying a motion to suppress evidence or a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment or order notwithstanding the fact that the judgment or order was entered upon a plea of guilty or no contest to the information or criminal complaint."

25

¶75 But guilt or innocence is often at stake at suppression hearings. In drug offenses and drunk-driving prosecutions, for instance, the result of the suppression hearing is often determinative of the case.[36] Often, when a defendant's motion to suppress fails, the defendant pleads guilty. "Something in the neighborhood of 85 percent of all criminal charges are resolved by guilty pleas, frequently after . . . motions to suppress evidence have been ruled upon." Gannett Co., 443 U.S. at 397 (1979) (Burger, C.J., concurring).[37] The United States Supreme Court has recognized that because our criminal justice system has become "'for the most part a system of pleas, not a system of trials,' it is insufficient simply to point to the guarantee of a fair trial as a backstop that

---

[36] See, e.g., Vill. of Granville v. Graziano, 858 N.E.2d 879, 882 (Ohio Mun. 2006) (applying the confrontation clause at a suppression hearing because the distinction between trial and pretrial suppression hearings has become particularly blurred in drunk driving cases, in which defendants must raise issues of the admissibility of test results in a pretrial motion to suppress); Curry v. State, 228 S.W.3d 292, 297 (Tex. Ct. App. 2007) ("In drug possession cases like the one before us, the outcome of the suppression hearing often determines the outcome of the trial itself."); Olney v. United States, 433 F.2d 161, 163 (9th Cir. 1970) ("We think that a motion to suppress evidence can well be [a critical] stage of prosecution, particularly in narcotics cases, where the crucial issue may well be the admissibility of narcotics allegedly found in the possession of the defendant.").

[37] By all accounts, this statistic is up: "In fiscal year 2015 the vast majority of offenders (97.1%) pleaded guilty." United States Sentencing Commission, Overview of Federal Criminal Cases Fiscal Year 2015 4 (2016), http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/FY15_Overview_Federal_Criminal_Cases.pdf

26

inoculates any errors in the pretrial process." Missouri v. Frye, 566 U.S. 133, 143-44 (2012) (internal citations and quotation marks omitted).[38]

¶76 Because the suppression hearing is frequently outcome-determinative, involves adversarial and trial-like practices, and requires the circuit court to weigh testimony as a fact-finder and apply the law to the facts, the Sixth Amendment compels the conclusion that an accused's Sixth Amendment confrontation right applies.

¶77 I conclude on the basis of the text of the Sixth Amendment, the history of the suppression hearing as a trial proceeding, the purpose and function of the suppression hearing, and the United States Supreme Court's interpretation and application of the enumerated Sixth Amendment rights to non-trial proceedings, that Zamzow has a Sixth Amendment right to confront witnesses at the suppression hearing.

---

[38] Missouri v. Frye, 566 U.S. 133, 143-44 (2012):

The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages. Because ours 'is for the most part a system of pleas, not a system of trials,' it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process (internal citations omitted).

¶78 The majority opinion nullifies the accused's Sixth Amendment's confrontation right at suppression hearings by adopting an absolute, no-exceptions-allowed holding.

* * * *

¶79 To conclude briefly, the Sixth Amendment right to confrontation applies at suppression hearings.

¶80 Suppression hearings are historically and functionally a part of the trial. Indeed, a suppression hearing often supplants the trial. The suppression hearing is a critical stage of the "criminal prosecution"; a defendant's right to a fair trial is dependent on counsel's ability to cross-examine adverse witnesses. The deterrence effect of the exclusionary rule will not be realized if the right to confrontation does not exist at the suppression hearing.

¶81 Because the suppression hearing involves adversarial and trial-like practices, is frequently outcome-determinative, and requires the circuit court to weigh testimony as fact-finder and apply the law to the facts, the Sixth Amendment, in my opinion, compels a court to recognize that defendants have a right to confrontation at a suppression hearing. By refusing to give Zamzow a confrontation right at the suppression hearing in the instant case, the majority opinion nullifies the Sixth

28

Amendment's guarantee that the "accused" shall have the right to confrontation "in all criminal prosecutions."[39]

¶82 Finally, the majority opinion seems to pose a serious problem for future suppression hearings. The State generally has the burden of proof at a suppression hearing that the evidence is admissible at the hearing. Rules of evidence apparently are not fully applicable at a suppression hearing. See Wis. Stat. §§ 901.04(1), 911.01(4)(a); State v. Jiles, 2003 WI 66, ¶¶25-30, 262 Wis. 2d 457, 663 N.W.2d 798.[40]

¶83 In the future, according to the majority opinion, the State may offer hearsay evidence in a suppression hearing. As a practical matter, the defendant may not ever be able to effectively cross-examine the witness. Isn't the result of the

---

[39] Christine Holst, in The Confrontation Clause and Pretrial Hearings: A Due Process Solution, 2010 U. Ill. L. Rev. 1599, 1624, proposes that the best avenue to protect a defendant's right to confrontation is under the Due Process Clause, rather than the Confrontation Clause. She concludes that "[a] restriction on confrontation at a pretrial hearing would then be unconstitutional if it denied the defendant his or her right to fundamentally fair procedure in the criminal prosecution process."

[40] See also United States v. Matlock, 415 U.S. 164, 172-74 (1974) ("[T]he rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence.") (discussing Brinegar v. United States, 338 U.S. 160 (1949); Fed. R. Evid. 104(a) & 1101(d)(1); and citing 5 J. Wigmore, Evidence § 1385 (3d ed. 1940); C. McCormick, Evidence § 53 n.91 (2d ed. 1972)); see also United States v. Raddatz, 447 U.S. 667, 679 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial.").

suppression hearing that the unsuppressed evidence may be introduced at trial? See ¶47, supra.

¶84 Court of Appeals Judge Paul Reilly, dissenting from the court of appeals decision in the instant case, posed the problem as follows: A paper review in which trial courts read police reports and review evidence such as dash cam videos to determine whether evidence should be suppressed may become the norm. The possible effect of the court of appeals decision (and the majority opinion in the instant case), according to Judge Reilly, is that hearsay and double hearsay testimony may be used at a suppression hearing to support the constitutional reasonableness of a search and seizure and therefore the admissibility of contraband, for example, when the same hearsay would likely not be admitted at trial.

¶85 Judge Reilly wrote as follows:

The effect of the majority's decision is that evidentiary hearings are no longer necessary to the determination of whether a warrantless search and/or seizure was constitutional. Suppression hearings may be reduced to a paper review in which trial courts read police reports and review evidence such as dash cam videos to determine whether a warrantless search or seizure was nevertheless lawful. The majority mistakes us for a civil law country rather than recognizing our common law foundation.

. . . .

The majority provides no guidance in how it expects courts to protect the Fourth Amendment rights of a criminal defendant such as Zamzow absent the Sixth Amendment's "crucible of cross-examination" in evaluating the government's accusations. By relying on Frambs, the majority disregards the Crawford Court's lament over the legacy of Roberts as one of "fail[ure] to provide meaningful protection from even

30

core confrontation violations." . . . As I fear this case continues that unfortunate legacy, I dissent.

State v. Zamzow, 2016 WI App 7, ¶¶22, 23, 366 Wis. 2d 562, 874 N.W.2d 328 (Reilly, J., dissenting).

¶86  For the reasons set forth, I dissent.

¶87  I am authorized to state that Justice ANN WALSH BRADLEY joins this dissenting opinion.