STATE of Wisconsin, Plaintiff-Respondent,

v.

Glenn T. ZAMZOW, Defendant-Appellant.†

Court of Appeals

*No. 2014AP2603–CR. Submitted on briefs April 3, 2015.—Decided December 2, 2015.*

2016 WI App 7

(Also reported in 874 N.W.2d 328.)

† Petition for Review Filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William J. Donarski* of *Law Office of William J. Donarski*, Green Bay.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Douglas R. Edelstein*, assistant district attorney, Fond du Lac.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Warren D. Weinstein*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶ 1. GUNDRUM, J. Glenn Zamzow appeals his convictions for operating a motor vehicle while intoxicated and with a prohibited alcohol concentration (OWI/PAC), third offense. Zamzow asserts that in denying his motion to suppress evidence, the circuit court improperly relied upon a recorded statement of the arresting officer. Zamzow challenges on hearsay, Confrontation Clause, and due process grounds the circuit court's admission of and reliance upon the recorded statement. We conclude the circuit court did not err and affirm.

### Background

¶ 2. On March 13, 2011, a Fond du Lac police officer executed a traffic stop of Zamzow that resulted in Zamzow ultimately being charged with OWI/PAC, third offense. Zamzow filed a motion to suppress,

arguing that the officer, who was deceased by the time of the hearing on the motion, lacked reasonable suspicion to stop him.

¶ 3. At the hearing, a squad car recording was admitted into evidence. Zamzow objected to admission of the audio portion of the recording on hearsay grounds and on the basis that admission would violate his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. The circuit court overruled his objection, and the video and audio portions were admitted and played for the court, with the court reporter taking down the audio portion. In the recording, the officer approaches Zamzow's vehicle after pulling him over and tells Zamzow "[t]he reason I stopped you is you were crossing the center line there coming at me and then again when I turned around and got behind you."

¶ 4. The circuit court stated that it observed in the video the officer turning around, speeding up, and eventually getting behind and stopping Zamzow and that it appeared as if Zamzow's tires were "very close to and/or upon the center line." The court stated that it could not discern if the tires had actually crossed the center line, adding, "But that's more the nature of the video, I suppose, than anything else." The court found that Zamzow had crossed the center line twice, stating that it was "relying upon the officer's [statement on the recording] as to the cross of the center line that [the officer] observed more so than the specifics that I observed in the video." The court concluded there was a sufficient basis for the stop and denied Zamzow's motion to suppress.

¶ 5. Zamzow moved for reconsideration, which the circuit court denied following a hearing, and he subsequently was convicted after a jury trial. He filed

a postconviction motion, reasserting his hearsay and Confrontation Clause objections and, for the first time, contending the court's reliance on the officer's recorded statement also violated his procedural due process rights under the Fourteenth Amendment to the United States Constitution. The court denied the motion after a hearing, and Zamzow appeals. Additional facts are set forth as necessary.

## Discussion

¶ 6. Zamzow contends the circuit court improperly admitted the officer's recorded statement and improperly relied upon it in finding that the officer had a lawful basis to stop Zamzow's vehicle.[1] Zamzow asserts the recorded statement was inadmissible hearsay and his rights under the Confrontation and Due Process Clauses were violated by the court's admission of and reliance upon the statement. Whether the admission of and reliance upon certain evidence violates specific statutory or constitutional provisions is a question of law we review de novo. *State v. Doss*, 2008 WI 93, ¶¶ 19–20, 312 Wis. 2d 570, 754 N.W.2d 150. We conclude the circuit court properly admitted and relied

---

[1] The parties frame the question as whether the officer had reasonable suspicion to stop Zamzow. If the officer observed Zamzow cross the center line, as the circuit court found, the officer would have had not just reasonable suspicion that a traffic law had been violated but probable cause as well. *See State v. Puchacz*, 2010 WI App 30, ¶ 16, 323 Wis. 2d 741, 780 N.W.2d 536 (holding that when the officer observed the defendant cross over the center line, the officer had probable cause to believe the defendant had operated his vehicle left of center, in violation of WIS. STAT. § 346.05 (2007–08)). All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

upon the officer's statement in the recording that he stopped Zamzow because he twice observed Zamzow's vehicle cross the center line.

¶ 7. Our decision in *State v. Frambs*, 157 Wis. 2d 700, 460 N.W.2d 811 (Ct. App. 1990), is on point. In *Frambs*, a witness provided a police officer with both an exculpatory statement implicating someone other than Frambs in the crime at issue and a subsequent incriminating statement implicating Frambs. *Id.* at 702. After providing the incriminating statement, the witness told the officer he "signed [his] own death warrant" by giving the statement, adding that Frambs had said "if anybody opens their mouth about [the crime] they will pay for it." *Id.* The witness indicated he should leave town before Frambs and Frambs' friends got to him. *Id.* The witness also informed a prosecutor that he was extremely fearful for his own safety and that following the crime, Frambs had threatened to kill him. *Id.*

¶ 8. The witness could not be located at the time of trial. *Id.* Frambs sought to have admitted into evidence at trial the witness's exculpatory statement implicating the other person in the crime. *Id.* at 703. The state objected, and a pretrial hearing was held where the officer and the prosecutor testified regarding the statements the witness had made to them related to his fear of Frambs. *Id.* The circuit court concluded that Frambs' misconduct had caused the witness's unavailability and therefore Frambs could not introduce into evidence the witness's alleged exculpatory statement. *Id.* Frambs was subsequently convicted. *Id.*

¶ 9. On appeal, Frambs challenged as unreliable the hearsay statements presented by the officer and prosecutor at the pretrial hearing regarding the wit-

ness's fear of Frambs. *Id.* In affirming the circuit court, we pointed out that WIS. STAT. § 901.04(1)[2] provides:

> Preliminary questions concerning [the qualification of a person to be a witness, the existence of a privilege, or] *the admissibility of evidence* shall be determined by the judge, subject to sub. (2) and [WIS. STAT. §§] 971.31(11) and 972.11(2). *In making the determination the judge is bound by the rules of evidence only with respect to privileges.*

*Frambs*, 157 Wis. 2d at 703–04 (first emphasis added). We held that courts are not statutorily bound to apply the hearsay rule at a pretrial hearing—in that case a pretrial hearing addressing the admissibility of evidence. *Id.* at 704; *see also State v. Jiles*, 2003 WI 66, ¶ 48, 262 Wis. 2d 457, 663 N.W.2d 798 ("[T]he rules of evidence do not apply at suppression hearings."). Specifically addressing the Confrontation Clause, we pointed out that the United States Supreme Court "has emphasized that the Confrontation Clause reflects a preference for face-to-face confrontation *at trial.*" *Frambs*, 157 Wis. 2d at 704 (quoting *Ohio v. Roberts*, 448 U.S. 56, 63 (1980), *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36 (2004)). Not only did we italicize "at trial" in this passage, we added that "[w]e see no evidence that the Supreme Court intended the protection of the confrontation clause to be available to a defendant in those pretrial situations enumerated in [§] 901.04(1)." *Frambs*, 157 Wis. 2d at 704; *see also Jiles*, 262 Wis. 2d 457, ¶ 31 (citing approvingly this same language from *Frambs*). We held that "Frambs had no confrontation

---

[2] We note that WIS. STAT. § 901.04(1) is the same in all relevant respects as it was at the time of *State v. Frambs*, 157 Wis. 2d 700, 460 N.W.2d 811 (Ct. App. 1990).

clause rights as to hearsay declarants at this motion hearing, and the trial court, at its discretion, could rely on hearsay testimony in making its ruling." *Frambs*, 157 Wis. 2d at 705.

¶ 10. Our holding in *Frambs* is consistent with Supreme Court precedent. In *United States v. Matlock*, 415 U.S. 164 (1974), the Court determined a federal district court erred when it "excluded from evidence at the suppression hearings, as inadmissible hearsay," various out-of-court statements made by a witness to officers. *Matlock*, 415 U.S. at 172. The Court stated:

> [D]istinguish[ing] between the rules applicable to proceedings to determine probable cause for arrest and search and those governing the criminal trial itself—"There is a large difference between the two things to be proved, as well as between the tribunals which determine them, and therefore a like difference in the quanta and modes of proof required to establish them."

*Id.* at 173 (quoting *Brinegar v. United States*, 338 U.S. 160, 173 (1949)). The Court further noted that "the same rules of evidence governing criminal jury trials are not generally thought to govern hearings before a judge to determine evidentiary questions . . . ." *Id.* The Court also referred to *McCray v. Illinois*, 386 U.S. 300 (1967), in which it affirmed the denial of a suppression motion following a hearing in which officers testified as to statements made by an unidentified informant, which statements provided the officers with probable cause to search the defendant (and find narcotics). The *Matlock* Court observed:

> At the initial suppression hearing [in *McCray*], the police proved probable cause for the arrest by testifying to the out-of-court statements of an unidentified informer. The Government would have been obligated to produce the informer and to put him on the stand

569

> had it wanted to use his testimony *at defendant's trial,*
> but we sustained the use of his out-of-court statements
> *at the suppression hearing,* as well as the Govern-
> ment's refusal to identify him. In the course of the
> [*McCray*] opinion, we specifically rejected the claim
> that defendant's right to confrontation under the Sixth
> Amendment and Due Process Clause of the Four-
> teenth Amendment had in any way been violated.

*Matlock,* 415 U.S. at 174–75 (emphasis added); *see also Pennsylvania v. Ritchie,* 480 U.S. 39, 52 (1987) (plurality opinion) ("The opinions of this Court show that the right to confrontation is a *trial* right . . . ."); *California v. Green,* 399 U.S. 149, 157 (1970) ("[I]t is this literal right to 'confront' the witness *at the time of trial* that forms the core of the values furthered by the Confrontation Clause." (emphasis added)); *Barber v. Page,* 390 U.S. 719, 725 (1968) ("The right to confrontation is basically a *trial* right. It includes both the opportunity to cross-examine and the occasion for the *jury* to weigh the demeanor of the witness." (emphasis added)).

█

¶ 11. In his brief-in-chief, Zamzow asserts that *Frambs,* "having been decided long before *Crawford* . . ., is no longer good law." This is in contrast with Zamzow's subsequent acknowledgement that "the *Crawford* case did not deal with the issue of pre-trial hearings." Zamzow's acknowledgement is completely correct— *Crawford* did not address pretrial hearings, in any way. Zamzow fails to identify any basis for concluding that *Frambs* is no longer good law; nor are we able to identify such basis. *Frambs* remains good law, and based on *Frambs,* as well as the cited Supreme Court precedent, we conclude the Confrontation Clause simply does not apply to pretrial hearings such as the suppression hearing at issue in this case, and the

circuit court's reliance upon the hearsay evidence from the recording was not improper.

¶ 12. Zamzow next asserts that under the Due Process Clause of the Fourteenth Amendment, "it would be fundamentally unfair to allow the trial court to make a finding of constitutional fact solely on a statement that cannot be tested for defects in perception." He states that the evidence from the recording was unreliable because the officer who made the statement was not able to be cross-examined. While Zamzow devotes numerous pages to his due process approach, he admits the approach is "novel" and identifies no case law supporting it.[3] We could simply decline to consider his due process contention for this latter reason alone, but we nonetheless choose to address it. *See State v. McMorris*, 2007 WI App 231, ¶ 30, 306 Wis. 2d 79, 742 N.W.2d 322 (appellate court "may choose" whether to consider arguments not supported by references to legal authority).

¶ 13. To begin, we return to the *Matlock* Court's discussion of *McCray*, and the use at the suppression hearing in the latter case of an unidentified informant's out-of-court statements providing officers with probable cause to search the defendant and find key evidence. The *Matlock* Court emphasized that in *McCray* the Court "specifically rejected the claim that defendant's right to confrontation under the Sixth Amendment *and Due Process Clause* of the Fourteenth Amendment had in any way been violated." *Matlock*, 415 U.S. at 174–75 (emphasis added). We also take note of the Supreme Court's discussion in *United*

---

[3] Indeed, Zamzow does not even develop an argument based upon analogizing this case to case law in other due process contexts.

*States v. Raddatz*, 447 U.S. 667 (1980), in the context of a Fifth Amendment due process challenge related to a confession, explaining why less process is due at suppression hearings than at a criminal trial:

> A defendant who has not prevailed at the suppression hearing remains free to present evidence and argue to—and may persuade—the jury that the confession was not reliable and therefore should be disregarded . . . . This Court on other occasions has noted that the interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself. At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial . . . . We conclude that *the process due* at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself.

*Id.* at 678–79 (emphasis added); *see also Jiles*, 262 Wis. 2d 457, ¶ 30 (quoting *Raddatz*, 447 U.S. at 679). Thus, the Supreme Court has, at a minimum, intimated that admission at a pretrial suppression hearing of hearsay statements where the declarant cannot be cross-examined does not present a due process problem.

¶ 14. Zamzow does not dispute that the officer in this case in fact told him, as captured on the recording, that the officer had observed him cross the center line twice. Comparing the officer's recorded statement to a written police report, Zamzow argues, however, that due solely to his inability to cross-examine the officer (because of the officer's death), such evidence was not sufficiently reliable for the circuit court to rely upon it in finding reasonable suspicion for the stop. We disagree. Unlike a police report, the audio recording

afforded the court a real-time observance of the actual interaction between the officer and Zamzow. The court was able to hear directly what the officer said to Zamzow and how he said it. Indeed, the court noted that the officer's statement was made directly to Zamzow, "at the very beginning of the stop," and was "conversational and an exchanging of information." While Zamzow was not able to challenge the officer's observations for "defects in perception," this does not make the officer's recorded statement unreliable. The question at the suppression hearing was whether a reasonable officer, knowing what the officer on the scene knew at the time of the stop, would have had reasonable suspicion that Zamzow had violated or was violating the law. *State v. Popke*, 2009 WI 37, ¶ 23, 317 Wis. 2d 118, 765 N.W.2d 569. The court properly concluded that the officer's recorded statement provided reliable evidence that the officer had observed Zamzow cross the center line, providing the legal basis for the stop.

¶ 15. Relatedly, Zamzow contends the circuit court's determination that the officer had reasonable suspicion to stop him was based "solely" on the officer's recorded statement as to why he pulled over Zamzow. Zamzow is incorrect. While the court did say at the suppression hearing that it was relying "more so" on the officer's statement of observing Zamzow twice cross the center line, this was not the only evidence upon which the court relied. The court observed from its own viewing of the video that at one point Zamzow's tires were "very close to and/or upon the center line," even though, due to the nature of the video, the court could not definitively discern if Zamzow had actually crossed

the center line.[4] The court further observed that at another point in the video Zamzow's vehicle approached the officer's and the officer turned his vehicle around, sped up, and got behind Zamzow's vehicle. At the hearing on Zamzow's motion for reconsideration, the court elaborated:

> [T]he very fact that the video identifies an officer in some traffic making a rather abrupt maneuver to do a U-turn in traffic on Johnson Street, which is one of the busiest streets in the community, is supportive of the officer's statement that . . . he observed the defendant cross the center line before he reached him.

At the hearing on Zamzow's postconviction motion, the court reiterated these observations and further explained that "the officer's statement in conjunction with what we saw, the unusual maneuver of the officer to get behind the defendant's vehicle and bring him to a stop all support the oral explanation given by the officer."

¶ 16. The circuit court rejected Zamzow's due process challenge based upon "what was said and what the circumstances [were], the physical maneuvers and locations," and concluded "there is a strong sense of reliability so that I don't believe that due process is compromised . . . ." In light of the Supreme Court cases identified above, Zamzow's failure to produce any case law supporting his due process argument, and the

---

[4] At the hearing on Zamzow's motion for reconsideration, the court stated that it had difficulty discerning for certain if Zamzow had in fact crossed the center line, noting that the video was somewhat unclear on this point "because of the, perhaps, caliber of the camera, the fact that it was at night, and the fact that the roads were slushy."

record in this case, Zamzow has failed to convince us the circuit court erred in this conclusion.[5]

*By the Court.*—Judgment and order affirmed.

¶ 17. REILLY, P.J. (*dissenting*). Glenn Zamzow was stopped by Officer Craig Birkholz without a warrant. At the stop, Officer Birkholz told Zamzow, "The reason I stopped you is you were crossing the center line there coming at me and then again when I turned around and got behind you." Sadly, Birkholz died soon after making this statement, and Zamzow was unable to question Birkholz or test his perceptions from that night in court. The court determined that the video of the stop was inconclusive as to whether Zamzow had crossed the center line, but nevertheless allowed the admission of this unsworn, untested, and unchallenged accusation and accepted its proposition that Birkholz had seen Zamzow cross the center line prior to the stop. The statement was undeniably testimonial as it described a past event with the purpose of establishing or proving that event in a later criminal prosecution, *see Davis v. Washington*, 547 U.S. 813, 822 (2006), and was made by an officer who intended to bear testimony in that prosecution, *see State v. Jensen*, 2007 WI 26, ¶ 24, 299 Wis. 2d 267, 727 N.W.2d 518.

---

[5] In addition to determining that the Confrontation Clause did not apply to the evidentiary hearing, the circuit court also ruled that the officer's recorded statement to Zamzow was nontestimonial and therefore was admissible "notwithstanding the confrontation clause." Zamzow contended, and continues to argue on appeal, that the statement was testimonial. Because we have concluded the Confrontation Clause is not implicated in pretrial hearings on motions to suppress evidence, we need not reach this issue. *See Hegwood v. Town of Eagle Zoning Bd. of Appeals*, 2013 WI App 118, ¶ 1 n.1, 351 Wis. 2d 196, 839 N.W.2d 111 (we need not address other issues when one is dispositive).

But for this unsworn, untested, and unchallenged accusation, the government could not have continued its prosecution of Zamzow.

¶ 18. The issue in this appeal is not the honesty or observational skills of Officer Birkholz. The issue is the constitutional right to confront one's accuser in a criminal proceeding. As the United States Supreme Court declared of the right provided to criminal defendants by the Confrontation Clause,

> [I]t is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined.

*Crawford v. Washington*, 541 U.S. 36, 61 (2004). Because the majority's decision undermines this procedural guarantee and paves the way for a dramatic shift in the prosecution of criminal defendants in Wisconsin, I respectfully dissent.

¶ 19. The Bill of Rights places limits on the power of our government to prosecute crimes. One limit is that the government may not subject its citizens to unreasonable searches or seizures, U.S. CONST. amend. IV, and another is that the government must permit the accused in a criminal prosecution an opportunity to confront his or her accusers, U.S. CONST. amend. VI. It is the government's burden to prove that a stop and/or search is constitutional. *State v. Blatterman*, 2015 WI 46, ¶ 17, 362 Wis. 2d 138, 864 N.W.2d 26. The test for determining whether a warrantless search or seizure is reasonable is commonly performed at a pretrial suppression hearing—a

critical, possibly decisive, step in the prosecution of a criminal case. *See Gannett Co. v. DePasquale*, 443 U.S. 368, 434 (1979) (Blackmun, J., concurring in part, dissenting in part). Indeed, "[t]he suppression hearing often is the only judicial proceeding of substantial importance that takes place during a criminal prosecution." *Id.*

¶ 20. Relying upon *State v. Frambs*, 157 Wis. 2d 700, 460 N.W.2d 811 (Ct. App. 1990), the majority concludes that neither the rules of evidence nor the Confrontation Clause apply at suppression hearings. Majority, ¶¶ 9–11. This determination rests upon a shaky foundation. *Frambs* relies upon *Ohio v. Roberts*, 448 U.S. 56 (1980), to state that the Confrontation Clause is inapplicable in pretrial proceedings. *See Frambs*, 157 Wis. 2d at 704–05. *Roberts* has since been overruled by *Crawford*, 541 U.S. 36. Furthermore, *Roberts* never declared that the right to confront one's accusers did not pertain to pretrial hearings as that was not a question presented to the *Roberts* Court. Yet, because *Roberts* used the word "trial" when describing the confrontation right, and the *Frambs* court relied upon this word choice, the majority decides that it may ignore the actual words used by the framers and limit the scope of the Confrontation Clause.

¶ 21. What the Confrontation Clause actually provides is "[i]n all criminal *prosecutions,* the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI (emphasis added). The majority errs by defining "prosecutions" so as to exclude all pretrial proceedings. If neither the Confrontation Clause nor the rules of evidence apply at pretrial hearings, what rules do apply? The pure whims of the judicial officer presiding over the case? As Justice Antonin Scalia wrote, "Dis-

pensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes." *Crawford*, 541 U.S. at 62. Yet, this is exactly what the majority condones in its decision today.

¶ 22. The effect of the majority's decision is that evidentiary hearings are no longer necessary to the determination of whether a warrantless search and/or seizure was constitutional. Suppression hearings may be reduced to a paper review in which trial courts read police reports and review evidence such as dash cam videos to determine whether a warrantless search or seizure was nevertheless lawful. The majority mistakes us for a civil law country rather than recognizing our common law foundation. *See id.* at 43 ("The common-law tradition is one of live testimony in court subject to adversarial testing, while the civil law condones examination in private by judicial officers.").

¶ 23. The majority provides no guidance in how it expects courts to protect the Fourth Amendment rights of a criminal defendant such as Zamzow absent the Sixth Amendment's "crucible of cross-examination" in evaluating the government's accusations. By relying on *Frambs*, the majority disregards the *Crawford* Court's lament over the legacy of *Roberts* as one of "fail[ure] to provide meaningful protection from even core confrontation violations." *Crawford*, 541 U.S. at 62–63. As I fear this case continues that unfortunate legacy, I dissent.