COURT OF APPEALS
DECISION
DATED AND FILED

July 30, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP797-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2017CF1834**

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ISAAC D. TAYLOR,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Waukesha County: MARIA S. LAZAR, Judge. *Affirmed*.

Before Neubauer, C.J., Gundrum and Davis, JJ.

¶1 GUNDRUM, J. Isaac Taylor appeals from a judgment of conviction for operating a motor vehicle while intoxicated (OWI), fifth offense, contending the circuit court erred in denying his motion to suppress the evidence flowing from the traffic stop performed on him. Taylor asserts that the Waukesha

police officer who performed the stop lacked reasonable suspicion. For the following reasons, we disagree and affirm.

## *Background*

¶2      Following the stop, Taylor was arrested and charged with OWI, fifth offense, operating after revocation, and operating with a prohibited alcohol concentration (PAC), fifth offense. He moved to suppress the evidence derived from the stop on the basis that the officer lacked reasonable suspicion to perform the stop. An evidentiary hearing was held on the motion, at which the arresting officer was the only witness to testify. His relevant and undisputed testimony is as follows.

¶3      Shortly before 9:00 p.m. on December 25, 2017, the officer was on patrol in his squad car when he drove by an apartment complex "known for its drug trafficking." As he approached the area of the complex, he observed a van parked at the curb across from it and a female standing outside the driver's side window who appeared to be speaking with the driver of the van, Taylor. She looked towards the approaching officer and then "turned and went back into the apartment complex and [Taylor] proceeded to travel southbound" past the officer. The officer observed the rear windows and believed them to be "excessively tinted," so he turned his squad car around and attempted to catch up to the van "to run its plate."

¶4      When the officer caught up to the van, Taylor pulled it into a private driveway, and as he did so, the officer was able to "get the plate." The officer proceeded past the van, turned his squad car around and parked about a "half block"/"like three houses" down on the opposite side of the street, facing the van so that the officer "could keep eyes on it." The officer sat in the squad car and

2

watched the van, which sat in the driveway for "maybe two minutes," during which time no one entered or exited the van or the house at that address. Taylor then backed the van out of the driveway and proceeded in the opposite direction from which he had been heading, away from the officer. The officer followed Taylor for a brief time before performing the traffic stop at issue in this appeal.

¶5      Following testimony, the circuit court ruled that the officer had reasonable suspicion that the windows were unlawfully tinted and thus had reasonable suspicion to perform the traffic stop.[1] Taylor eventually pled to OWI, fifth offense, the PAC charge was dismissed, and the operating while revoked charge was dismissed but read in. Taylor now appeals, challenging the court's ruling on his suppression motion.

## Discussion

¶6      As before the circuit court, Taylor asserts on appeal that the officer lacked reasonable suspicion to perform the traffic stop. We disagree.

---

[1] The officer testified that he performed the traffic stop because he believed the windows on Taylor's van were tinted darker than allowed by law. The circuit court subsequently held that the stop was lawful because the officer had reasonable suspicion that the tint violated the law. Not surprisingly then, Taylor focuses his appeal on this holding. We, however, affirm the circuit court on other reasonable suspicion grounds, as we may do. *See State v. Holt*, 128 Wis. 2d 110, 124-25, 382 N.W.2d 679 (Ct. App. 1985). When considering whether reasonable suspicion existed, "we apply an objective standard in reviewing the actions of law enforcement officers. Thus, it is the circumstances that govern, not the officer's subjective belief." *State v. Buchanan*, 178 Wis. 2d 441, 447 n.2, 504 N.W.2d 400 (Ct. App. 1993). Ultimately, we ask whether, knowing what the officer here knew at the time he performed the stop, a reasonable officer would have reasonably suspected that criminal activity was afoot. *See State v. Zamzow*, 2016 WI App 7, ¶14, 366 Wis. 2d 562, 874 N.W.2d 328 (2015); *see also State v. Lefler*, 2013 WI App 22, ¶11, 346 Wis. 2d 220, 827 N.W.2d 650 ("We decline to adopt the arguments advanced by either party or the legal conclusion of the circuit court. Instead, we find a separate reason justifying the search by the officer ….").

¶7 When, as here, the facts are undisputed, we review de novo whether those facts satisfy the constitutional standard, in this case reasonable suspicion. *See* **State v. Anagnos**, 2012 WI 64, ¶21, 341 Wis. 2d 576, 815 N.W.2d 675. As we have stated:

> A law enforcement officer may detain an individual for investigative purposes if reasonable suspicion … of criminal activity exists. Reasonable suspicion exists if, under the totality of the circumstances, "the facts of the case would warrant a reasonable police officer, in light of his or her training and experience, to suspect that the individual has committed, was committing, or is about to commit a crime." Reasonable suspicion must be based on more than an officer's "inchoate and unparticularized suspicion or 'hunch.'" An officer "'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the intrusion of the stop."

**State v. Rose**, 2018 WI App 5, ¶14, 379 Wis. 2d 664, 907 N.W.2d 463 (2017) (citations omitted). Our supreme court also has explained:

> [S]uspicious conduct by its very nature is ambiguous, and the [principal] function of the investigative stop is to quickly resolve that ambiguity. Therefore, if any reasonable inference of wrongful conduct can be objectively discerned, notwithstanding the existence of other innocent inferences that could be drawn, the officers have the right to temporarily detain the individual for the purpose of inquiry.

**State v. Young**, 2006 WI 98, ¶21, 294 Wis. 2d 1, 717 N.W.2d 729 (alterations in original; citation omitted).

¶8 To recap, at around 9 p.m., the officer observed Taylor parked across from an apartment complex "known for its drug trafficking." Taylor appeared to be engaging with a female at his driver's side window, but when she saw the officer approaching in his squad car, she left Taylor and went into the complex, and Taylor drove away from the area. When the officer turned his squad car

around, followed Taylor, and eventually caught up to him, Taylor turned into a private driveway. When the officer passed by, turned around, parked and watched Taylor from a short distance away, Taylor just sat in the driveway for "maybe two minutes," neither exiting his vehicle nor conducting any sort of business at that address, before backing out and driving in the opposite direction, away from the officer.

¶9     Considering the totality of the circumstances presented by these "specific and articulable facts," we conclude reasonable suspicion existed for the officer to perform the traffic stop. *See Rose*, 379 Wis. 2d 664, ¶14 (citation omitted). Suspicion would have begun for a reasonable officer when Taylor, who was in his van and faced in the direction of the oncoming officer, and the woman meeting with him in front of this apartment complex "known for its drug trafficking" broke off their meeting and both departed the area just as the officer approached their location in his squad car. While it is of course entirely possible that they just happened to coincidentally finish their meeting at the moment the officer approached, another reasonable inference is that they broke off their meeting *because* the officer was approaching and they wanted to make themselves unavailable for interaction with him. As our supreme court has held, "police officers are not required to rule out the possibility of innocent behavior before initiating a brief stop." *Young*, 294 Wis. 2d 1, ¶21 (citation omitted). The fact that Taylor was engaging with this female at this particular location at night, instead of in the light of day, adds to the suspicion. *See State v. Allen*, 226 Wis. 2d 66, 74-75, 593 N.W.2d 504 (Ct. App. 1999) (in considering whether there was reasonable suspicion to stop and frisk the defendant after observing him engage in a brief meeting on the street in an area with a "reputation for drug

5

dealing," the fact that the meeting took place at night was "another factor in the totality of the circumstances equation").

¶10   Suspicion would have increased for a reasonable officer when Taylor turned into the private driveway just as the officer caught up to his van. Then, when the officer turned his squad car around and watched Taylor, Taylor just sat in the driveway for approximately two minutes. While one could suggest, as Taylor's counsel intimated through her questioning at the suppression hearing, that Taylor was just "turn[ing] around in the driveway," common sense and practical experience inform that a vehicle operator realizing he or she is heading in the wrong direction, does not sit in a private driveway for *minutes*, instead he or she pulls in and out within seconds, proceeding in the opposite direction. Nor does an operator concerned about whether he or she has correct directions pull into a private driveway and sit for minutes to evaluate the situation; he or she generally pulls off to the side of the road or into an area open to the public and at such a location figures out the correct directions. The most reasonable inference from Taylor's conduct is that he was aware of the officer's presence at the apartment complex, pulled into the driveway hoping the officer, who had turned around and likely appeared to be following him, would simply pass by and depart the area. Then, when the officer parked a short distance away, Taylor, likely nervous and unsure of how to proceed, pulled out and drove in the opposite direction in order to avoid passing nearby the officer. Taylor's actions strongly suggest he was concerned about the officer's presence, specifically that the officer may be following him, and that he was deliberately trying to avoid any sort of interaction with the officer. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[E]vasive behavior is a pertinent factor in determining reasonable suspicion.").

6

¶11    As our supreme court has stated:  "[I]f any reasonable suspicion of past, present, or future criminal conduct can be drawn from the circumstances, notwithstanding the existence of other inferences that can be drawn, officers have the right to temporarily freeze the situation in order to investigate further."  *State v. Jackson*, 147 Wis. 2d 824, 835, 434 N.W.2d 386 (1989).  Here, the totality of the circumstances created reasonable suspicion that Taylor was engaged in drug-related criminal activity.[2]

---

[2] The Dissent's overarching argument is that deciding on "other grounds" is not appropriate because the facts regarding reasonable suspicion were not addressed below either by the parties or the circuit court.  The Dissent suggests that the only facts and issue addressed before the circuit court were whether there was reasonable suspicion of an equipment violation—excessive window tint.  That is not accurate.

First, the motion to suppress was generic—it was based on the contention that there was no reasonable suspicion under a totality of circumstances to effect a *Terry* stop.  *See Terry v. Ohio*, 392 U.S. 1 (1968).  Taylor's motion was not based on and did not argue that the excessive window tint did not amount to reasonable suspicion of an equipment violation.

Second, at the motion hearing, Taylor's lawyer's questions and arguments were focused on the absence of reasonable suspicion based on the totality of circumstances, and not simply whether there was reasonable suspicion of an equipment violation arising from the observed excessive tint.  The officer was questioned relatively extensively about the facts regarding his observation of the woman talking to Taylor at the van, their departure after the woman observed the officer's squad car, the time of night, the officer's decision to follow Taylor and run his plates, and the officer's observation of Taylor in the driveway, etc.

So, while the Dissent suggests that the facts were not fleshed out, that is not correct.  Defense counsel asked many questions and neither he nor anyone else limited those questions to the issue of whether the window tint was enough to support reasonable suspicion of an equipment violation.  For example, while the Dissent suggests more questions would have been asked had the issue been one of reasonable suspicion based on a totality of circumstances under *Terry* (as compared to only based on an equipment violation), the officer was asked about his observation of the car in the driveway, and he testified as to how far away he was, and that his purpose was to keep an eye on Taylor.  In an effort to portray sparse facts, the Dissent also ignores that the officer testified that upon seeing the squad car, the woman left and Taylor drove away.

(continued)

7

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.

---

Additionally, in looking at the "totality of the circumstances," the circuit court did find facts. The court recounted, for example, that the officer observed that Taylor's van was "in a location where there was known criminal activity," the woman was talking with Taylor at the van, Taylor and the woman both left "shortly after [the woman] view[ed] [the officer's] squad car," and the officer followed Taylor after observing the windows to be tinted to a degree the officer believed to be unlawful. Of note, the officer testified that he noticed the windows to be excessively tinted before he even turned around to follow the van, yet he did not conduct a traffic stop upon catching up to it; instead, he drove past the van, turned his squad car around, and watched Taylor further, gathering more evidence relevant to the totality of the circumstances.

Now, the circuit court did "add" the suspected excessive window tint to the other facts supporting reasonable suspicion, and as such, Taylor's appeal focuses on whether reasonable suspicion of an equipment violation was legally established. But, it simply is not correct to say that the facts upon which the Majority relies were not adequately fleshed out, such that, somehow, defense counsel was deprived of an opportunity to do so, or that we are now finding facts.

¶12    DAVIS, J. (*dissenting*).   In reasonable suspicion cases, the law permits (but does not require) us to affirm on grounds that were not the basis for the circuit court's decision.  *See **State v. Holt***, 128 Wis. 2d 110, 125, 382 N.W.2d 679 (Ct. App. 1985), *superseded by statute on other grounds*, WIS. STAT. § 940.225(7) (1985-86) ("An appellate court may sustain a lower court's holding on a theory or on reasoning not presented to the lower court.").   I would not invoke this principle so as to allow the State to sandbag the defense with an entire fact-intensive case theory that is argued for the first time on appeal—effectively turning us into fact finders in the process.   Because that is what happened here, and because the newly argued theory is itself dubious even had it been the subject of proper proof and argument, I respectfully dissent.

¶13    An officer stopped Taylor because he believed Taylor's car had an excessive window tint.   That was the primary reason the officer gave for the stop and the primary subject of the testimony at the suppression hearing.   That was also the basis for the circuit court's ruling.   The problem is that, at the suppression hearing, the State, presumably through oversight, made no attempt to establish that the officer had the training or experience to draw this conclusion, as required by ***State v. Conaway***, 2010 WI App 7, ¶¶7-13, 323 Wis. 2d 250, 779 N.W.2d 182. This was the basis for Taylor's appeal.   Rather than take on that issue—the only issue actually before us—on appeal, the State concedes the error but argues that there were other grounds on which Taylor *could have been* the subject of a reasonable stop.   Although a shift in theories by the party prevailing below is not

necessarily impermissible, it is a path on which we should tread lightly, and with due regard for a defendant's ability to fairly meet the prosecution's case theory.

¶14     In essence, the Majority opinion creates a hypothetical situation, one in which we are required to ignore the primary reason the officer gave for the stop—that Taylor had an excessive window tint. Instead, we have a scenario in which a hypothetical officer first observed Taylor near an apartment building (with a purported known history of drug activity), speaking with a woman, and then driving away. Next our hypothetical officer began following Taylor for reasons that are unknown, but which could have nothing to do with reasonable suspicion that there was criminal activity afoot. The officer saw Taylor pull into a driveway and, after two minutes, pull out and turn around. That was all that this hypothetical officer had to go on.

¶15     These facts simply do not make out a case for reasonable suspicion. On review of the sparse record (sparse because the parties were litigating a different issue, excessive window tint), the case only gets worse. The officer initially described the encounter between Taylor and the woman as "a short time contact," which "usually means some sort of illegal activity such as a drug deal." On further questioning, however, the officer admitted that he had no way of knowing how long the woman had been standing in front of the driver's side door. Thus, the officer did not articulate any grounds supporting his belief that this was "a short time contact." And aside from explaining that this was a "known apartment complex," the officer did not explain why he suspected illegal activity between Taylor and the woman.

¶16     The notion that people are not free to talk to one another on the street (even a street in front of a "suspicious" building), or end conversations as

2

they see fit, without thereby providing grounds for a temporary stop, is ludicrous. That this was a "known apartment complex" (a hearsay laden conclusion that was barely mentioned or explored during the suppression hearing) might be significant in another context, but here there was no articulated reason for suspecting that Taylor and the woman were conducting a drug transaction. Surely, little meaning can attach to the sole fact that this woman lived in, or knew someone that lived in, this building.[1] And even if this were "a short time contact"—which we have no way of knowing—this fact alone is irrelevant unless, again, there was some reason for suspecting drug activity.

¶17 Moreover, generally speaking, the fact that this incident occurs at night might be relevant where a defendant attempts illegal activity under cloak of darkness, or takes advantage of deserted surroundings to commit a crime while others are sleeping. But two people talking on the street just before 9 p.m. (on Christmas Day yet) does not take on a suspicious character simply because it is dark.

¶18 In any case, continuing with our hypothetical scenario, our hypothetical officer, who decided to follow Taylor for no apparent hypothetical reason, now sees Taylor turn into a driveway, stay there for two minutes, and pull out and go in the opposite direction. At this point the question becomes whether our hypothetical officer had a reason to suspect that Taylor was violating a law.

---

[1] I fail to see how merely being in the vicinity of a "known apartment complex" could be probative in most contexts, but here, we do not even know what that phrase means. What kind of drug activity occurs in this building, to what extent, by how many suspected drug dealers, etc.? Presumably, if drug dealers live in this building, so do law-abiding citizens—and what about visitors? Suspicion cannot attach to everyone that enters a building, much less people who talk to people who enter a building.

3

Of course, the real officer had no such suspicion other than a window tint, which the State concedes does not count.

¶19    There are two problems with picking out random, untethered facts from an officer's description of the scene and using these as building blocks in the reasonable suspicion analysis. First, there is a practical problem: there will have been no real examination of the testifying officer on those points (because why would counsel for either side focus on tangential remarks?), and thus no fact-finding by the circuit court. This puts the appellate court in the uncomfortable and inappropriate position of fact finder in the first instance. Here, for example, the Majority posits that Taylor and the woman may have "broke[n] off their meeting *because* the officer was approaching and they wanted to make themselves unavailable for interaction with him." If, however, the officer himself had stated that Taylor's leaving at this moment was significant, then this point could have been developed: Did Taylor look hurried? Anxious? *Did he appear to even notice the officer?*

¶20    So it is clear, there is no question that we may affirm on other grounds, *where the factual basis for those grounds has been developed at the trial level* (or where reversal at the appellate level would produce the same result on remand). *See Holt*, 128 Wis. 2d at 124-25 ("It is well-established that if a trial court reaches the proper result for the wrong reason, it will be affirmed. Underlying this principle is the notion that if a second, error-free trial would lead to the same result, the first decision should be affirmed." (citation omitted)); *State v. Lefler*, 2013 WI App 22, ¶11, 346 Wis. 2d 220, 827 N.W.2d 650 ("declin[ing] to adopt the arguments advanced by either party or the legal conclusion of the circuit court" in denying a suppression motion, where this court determined that there was a separate legal basis for the search of the defendant's vehicle). But the

Majority's application of that principle here is in error because there has been no development of the factual record below on the new grounds given for affirmance.

¶21     Similarly, with respect to turning around in the driveway, we have no factual development as to why this was suspicious—or why it was not. Neither party at the circuit court delved into this point because it was not the basis for the stop, nor the subject of the suppression hearing. Indeed, this fact did not come out at the suppression hearing *at all* until the cross-examination of the officer by Taylor's counsel. So we do not know, for example, how close the officer was to Taylor's car (which might bear on whether a reasonable officer would be alerted that Taylor was taking evasive action), because there was no reason for the defense to address this point. Nor do we know what training or experience the officer had with evasive behavior—although if he had such training or experience, it apparently led him to believe there was nothing suspicious about Taylor's actions in this case. What we *do* know is that the officer did not view Taylor's actions with any suspicion. For all we know, that is because of some fact that neither party brought out at the hearing. Under such circumstances, it seems entirely inappropriate for this court to take upon itself the task of fact-finding that the law puts in the hands of the parties and circuit court.

¶22     Second, and more fundamentally, an exercise in which any court—circuit or appellate—repurposes facts in this manner subverts the reasonable suspicion analysis, turning it into an exercise in speculation divorced from that officer's actual encounter with that defendant. Although this analysis is an objective one, the inquiry being whether the facts would cause a reasonable officer to reasonably suspect criminal activity, the objective standard developed to protect *the defendant*, the idea being that "[a]nything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than

5

inarticulate hunches." ***Terry v. Ohio***, 392 U.S. 1, 21-22 (1968). Of course, this principle may also work in the prosecution's favor, in that an officer's intent is irrelevant so long as his or her actions are objectively lawful. ***Whren v. United States***, 517 U.S. 806, 811-13 (1996). The point, however, is to have a yardstick by which to measure the reasonableness of the officer's beliefs and actions. The objective standard does not mean—it cannot mean—that the court may cobble together facts the officer himself thought irrelevant *or did not even describe* so as to create an artificial construct: reasonable suspicion for the hypothetical officer.[2] To the contrary, our cases judge reasonable suspicion based on the level of training and experience that the officer who actually conducted the stop had in addressing the situation at hand. *See* ***State v. Jackson***, 147 Wis. 2d 824, 834, 434 N.W.2d 386 (1989) (question is "what would a reasonable police officer reasonably suspect in light of his or her training and experience?").

---

[2] A close reading of the case law, including that relied upon by the Majority, supports the point that a proper "reasonable suspicion" inquiry rests on the officer's identification and appreciation of specific facts he or she deems suspicious. *See, e.g.*, ***California v. Hodari D.***, 499 U.S. 621, 624 (1991) ("[O]f course, [the officer's] seeing the rock of cocaine, *at least if he recognized it as such*, would provide reasonable suspicion for the unquestioned seizure that occurred …." (emphasis added)); ***United States v. Sokolow***, 490 U.S. 1, 7 (1989) ("*The officer* … must be able to *articulate* something more than an 'inchoate and unparticularized suspicion or hunch.'" (emphasis added; citation omitted)); ***Adams v. Williams***, 407 U.S. 143, 146 (1972) ("A brief stop … may be most reasonable in light of the facts *known to the officer at the time*." (emphasis added)); ***United States v. Mendenhall***, 446 U.S. 554, 561 (1980) (reasonableness of stop depends on "the objective facts upon which the law enforcement officer *relied* in light of *his knowledge and expertise*" (emphasis added)); ***State v. Arias***, 2008 WI 84, ¶45, 311 Wis. 2d 358, 752 N.W.2d 748 ("[T]he scope of the officer's inquiry, or the line of questioning, may be broadened beyond the purpose for which the person was stopped only if additional suspicious factors *come to the officer's attention* …." (alteration in original; emphasis added; citation omitted)); ***State v. Zamzow***, 2016 WI App 7, ¶14, 366 Wis. 2d 562, 874 N.W.2d 328 (2015) ("The question … [is] whether a reasonable officer, knowing what the officer on the scene *knew at the time of the stop*, would have had reasonable suspicion that [the defendant] had violated or was violating the law." (emphasis added)).

¶23    Finally, in any case, the record does not support the conclusion that our hypothetical officer acted reasonably in first following Taylor and then pulling him over. Again, we have to ignore the circumstances of Taylor's location, the time of night, and his talking to the woman—as discussed above, these facts were not sufficient to justify having our hypothetical officer follow Taylor, and therefore add nothing to the reasonable suspicion analysis. *See United States v. Wood*, 106 F.3d 942, 948 (10th Cir. 1997) ("Although the nature of the totality of the circumstances test makes it possible for individually innocuous factors to add up to reasonable suspicion, it is 'impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation.'" (citation omitted)). So the inquiry narrows to whether there was something suspicious about Taylor's subsequent driving maneuvers: his driving away as the officer approached, turning into a driveway, waiting two minutes, and then leaving in the opposite direction.

¶24    Unlike the Majority, I do not necessarily think that Taylor was attempting to avoid the police—we simply have no fact-finding on that point, and there are a variety of reasonable explanations as to why someone might pull into a driveway (or park on the street) for a short time before turning around. But even if we put the most damning gloss on these facts, we reach a pretty unremarkable conclusion: Taylor was trying to avoid this officer through an unobjectionable, and perfectly legal,[3] driving maneuver. This is not "flight" of the sort that our jurisprudence has established constitutes reasonable suspicion. *See State v. Anderson*, 155 Wis. 2d 77, 82, 454 N.W.2d 763 (1990). And to the extent this

---

[3] We do not know whose driveway Taylor pulled into—another point the Majority glosses over—so on this record, I cannot conclude that he was trespassing.

7

driving maneuver might conceivably be deemed "evasive behavior," we have no testimony that a reasonable officer with this officer's training and experience would view it that way. *State v. Fields*, 2000 WI App 218, ¶¶6, 22, 239 Wis. 2d 38, 619 N.W.2d 279 (noting officer's testimony as to why his experience with drivers seeking to evade contact with police caused him to suspect driver's conduct in stopping at intersection for unusually long period, while still finding reasonable suspicion lacking). Certainly *without* such testimony, that fact alone cannot be the beginning and the end of the reasonable suspicion inquiry. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (nervous, evasive behavior may be *pertinent* to determining reasonable suspicion).

¶25 Basically what we have here is someone who drove away after speaking with a woman at his car window on Christmas Day, who was followed by an officer, and who, a short time later, turned around in a driveway. Neither the officer who made the stop, nor the lawyers and trial judge who conducted the suppression hearing, viewed *these* facts as giving rise to reasonable suspicion sufficient to justify a stop. I see no basis on which this court is in a position to second-guess any of them on that point. Without more than these facts—and, particularly, given that the hearing involved no development of the facts that the Majority now deems relevant to the reasonable suspicion analysis—I cannot join the Majority opinion.